RODERICK DORSEY *vs.* HENRY WAYMAN AND OTHERS.—
*December,* 1847.

*W. & H.* agreed in writing, signed by them, that *W.* had sold to *H.* " all that part of a tract of land, called *R.*, lying adjoining the turnpike road near where *P.* now lives, at, &c.—we having this day settled our other business without including the sale for this land, we make this memorandum to save trouble in case of accident to either of us." *Held :*

1st. That this agreement contained no sufficient description of the land sold ; the bounds and quantity are both uncertain and indefinite, and could not be enforced any further than as admitted by *H.*

2d. That claims due *H.* long anterior to the above settlement, must, under the circumstances, be considered as closed.

Where a creditor has two claims against his debtor, and a payment made was designed to be on account of one, but was credited in fact to the other, with the consent of the debtor, he cannot afterwards, in the absence of any agreement to change the application of the money, insist, there was error in the credit.

Where a party voluntarily pays money, not being ignorant of the facts on which his liability depended or was asserted, though the demand is invalid, he cannot claim to apply such payment to another demand which his creditor has against him.

Where three parties were responsible as sureties upon a promissory note, and upon a difference arising as to the extent of their several liabilities, it was agreed that the note should be renewed—one being maker, and the two others endorsers ; the latter endorser being security for the first. The executor of the maker having paid the note, omitted to present his claim to such last endorser until the estate of the *first* endorser, which was amply sufficient to pay his liability, was settled up ; and when no recourse could be had against it.—*Held*, that the latter endorser was discharged.

The last endorser on a promissory note, who was the security for a prior endorser, does not lose his claim against his immediate principal, by continuing to endorse renewals of the note, which fell due after his principal's death.

APPEAL from the Court of Chancery.

The bill in this cause was filed by the appellant on the 7th September, 1837, and alleged that in 1818, *William Hobbs, of S. &c.* deceased, being seized and possessed of a parcel of land, agreed with *Henry Wayman* to sell him the same at and for the price of \$20 *an acre,* and the said *Wayman* agreed to pay the purchase money for said land in annual instalments of \$100 ; that *Wayman,* shortly after said agreement

entered into possession, and ever since has held and used the same. That the precise quantity contained in said parcel was unknown at the time of the agreement, but has since been ascertained to be 30 *acres*, 1 r. and 20 sq. p. so that the purchase money therefor amounts to the sum of $607 50; that the said *W.* has paid the sum of $67, on account of said purchase, but that the residue remains due; that *W.* was also indebted unto the said *Hobbs*, deceased, $843, with interest from the 23d June, 1827; that since the death of said *H.* the said *W.* has paid to him as executor of said *H.* several sums of money on account, which are all endorsed on said note, and that the residue of the principal and interest secured by said note is still due.

That some time in the year 1823, *W.* and *Richard Dorsey*, were liable as endorsers on a note drawn by *Doctor Warner Hobbs*, for the sum of $600, which was discounted for accommodation of the said *Warner Hobbs*, at the *F. C. Bank*. That *W. H.* died insolvent, and *William Hobbs, of Samuel*, having administered on his estate, it was agreed between the said *W. H.* and *Richard D.* and *W.* that the accommodation should be continued on a note to be drawn by said *Hobbs*, and endorsed by *Richard D.* and *W.* and that *D.* and *W.* should be responsible for the deficiency which should remain due after the application of proportionable dividends of the personal and real estate of *Warner H.* to the reduction of said note. That a note was accordingly drawn, endorsed and substituted as aforesaid, and renewed from time to time, the discounts on every renewal were paid, and certain sums were paid, in reduction of the principal, and on the 23d May, 1831, the sum of $375 56, being the entire balance due on said note, was paid into the *F. C. Bank*, by complainant as executor of the said *William Hobbs*. That some time after the agreement last aforesaid, the name of complainant was substituted as endorser on said note, in place of the name of the aforesaid *Richard Dorsey*, whereby the said *R. D.* was discharged from his liability, but the liability of said *W.* remained: that the said *W.* is largely indebted unto the estate of the said *Hobbs*, for his moiety of said

note and interest: that *William Hobbs*, has lately departed this life leaving complainant his executor, and devised the residue of his real and personal estate to *Rachel Dorsey*, then the wife of complainant, but since deceased, &c.; that *W.* pretends that he has large unsettled demands against the said *William Hobbs*, deceased, and which he insists ought to be set off against complainant's claims as aforesaid. Complainant does not admit the right of said *W.* to any credits in addition to those which are herein before mentioned, excepting that there has been received from the estate of *Warner Hobbs*, on account of the debt originally due by him, as is herein before stated, the following dividends of real and personal estate; that is to say, &c. that it is pretended by said *W.* that some of the aforesaid demands of your orator—and particularly the last—are barred by limitations. On the contrary, it was distinctly admitted by the said *W.* at the time of making the agreement aforesaid for a reference, that the claims aforesaid were not barred; and the said *W.* did expressly undertake and promise to pay whatever sum should be ascertained to be due to your orator as aforesaid; that said admission and undertaking were made some time in the year 1836. Prayer for subpœna and answer, and for other and further relief.

With this bill were filed :

### Exhibit C.

$843. Twelve months after date, this, my note, shall oblige me, my heirs, executors or administrators, to pay, or cause to be paid, unto *William Hobbs, of Samuel*, his heirs or assigns, the sum of $843, value received, with interest from date. As witness my hand and seal this 23d June, 1827.

Witness, *Rod'k Dorsey.*     Henry Wayman, [*Seal.*]

Received Nov. 2d, 1830, $98 88 on the within.     R. D.
Received 16th May, 1831, $500 on the within.     R. D.
Received 22d October, 1831, $250 on the within.  R. D.

### Exhibit D.

*Dear Sir :*—I have some *Baltimore notes*, which I gave *Nancy* to take care of: as she has gone up to your house to-

day, I can't send them, not knowing where she has put them. I send the endorsement on the blank paper for the bank, and agree to sustain one-half the loss on the note, in case the estate on being settled up should be insolvent.        Rod'k Dorsey.

Henry Wayman.

*Monday Morning.*

Whereas, *Col. Dorsey* was one of the endorsers of *Warner Hobbs, Esquire,* and it is the intention of *Richard Dorsey,* to pay one-half of the deficiency, in case there should be a deficiency in *Warner Hobbs'* estate; I shall hold myself accountable with the said *Dorsey,* to an equal proportion with *Mr. William Hobbs.*                Henry Wayman.

*August 4th,* 1823.

*Henry Wayman's* answer admits the death of *William Hobbs ;* that the complainant is his executor, and that the co-defendants are his devisees and heirs at law.  He denies that he ever did purchase or agree to purchase of the said *Hobbs,* the land as stated in the said bill and *Ex. A,* and he further denies that the memorandum of an agreement, complainants' *Ex. B,* which it is admitted is signed by this defendant, refers, or was intended to refer to the land as plotted and described in the complainant's *Ex. A,* of which this defendant denies all knowledge or notice.  But, he admits, that some time before 1827, he sold to one *Haskell,* a parcel of land adjoining the land of the said *William Hobbs ;* that said *Haskell* intending to build on said land thus purchased by him, did by mistake, erect his dwelling upon the land of the said *Hobbs,* being a small parcel, lying adjoining the turnpike road, and called " *Range Declined,*" that finding his mistake, the said *Haskell* contracted to purchase of said *Hobbs,* this parcel of land, at $20 00 per acre, that afterwards, said *Haskell* moving off and abandoning his purchase of this defendant, and of said *Hobbs,* this defendant agreed to take the contract, made by said *Haskell* with said *Hobbs,* and to purchase this parcel of land of the said *Hobbs* at the price aforesaid per acre, the quantity then being unascertained, as stated in complainants' Ex. B.

That afterwards, the same was ascertained to contain five acres and eighteen perches, and that it was to this five acres and eighteen perches, and to it alone, that the said memorandum of an agreement, Ex. B refers; that for the balance of this purchase, after deducting the $67 paid for said *Hobbs* by this defendant, and interest, this defendant admits he is indebted to the complainant.

That the lands claimed by the complainant in his bill and Ex. A, with the exception of the part thereof, five acres eighteen perches aforesaid, were purchased by this defendant's father, *John Wayman*, about 1782, and that since 1792, this land, with the exception aforesaid, came into the possession of this defendant, by the death of his said father, and has ever since been quietly and exclusively used, held, occupied and enjoyed, under enclosures, as this defendant's own absolute property, and this defendant relies upon this long and uninterrupted possession, by enclosures, for more than forty years as a bar to any claim thereto set up by the said bill.

He admits the execution of the single bill, complainant's Ex. C, and the credits; and alleges that defendant has not received credit thereon for sundry sums of money, as per, &c. paid by this defendant for said *Hobbs*, on account of said *Hobbs'* note, for all of which credits, it was agreed by said *Hobbs* this defendant should be credited on his single bill aforesaid, which credits this defendant insists should now be made. He denies that he ever was an endorser of a note of *Dr. Warner Hobbs*, or in any manner liable on his account, as alleged in the said bill. He admits that he did sign the agreement in writing, the complainant's Ex. D. But this defendant denies that the said agreement applies, or was intended to apply to the note drawn by *W. H.* and endorsed by *Roderick D.* and this defendant, the complainant's *Ex. F.* The circumstances and facts of that matter this defendant avers were as follows:—

*Dr. Warner Hobbs*, a son of said *W. H.* was drawer of a note, and said *W. H.* and *Richard D.* endorsers thereon; that after the death of *Warner H.* there was some controversy between the said endorsers, as to the extent of their respective

liabilities thereon, when it was agreed between them that they should share in equal parts any loss they should thereby sustain; and in order to keep up the negotiation until the loss could be ascertained, it was agreed that *William H.* should be the drawer of the note, *Richard D.* become first endorser, and this defendant agreed to become the second endorser, and to be security for *Richard D.* to the extent of what he should be bound to pay under said agreement, in case the said *Richard D.* should fail to pay the same, and in no other event whatever; that the said *Richard D.* afterwards died, leaving large and valuable estates, real and personal, more than adequate to the payment of all his debts and liabilities; that if any thing be due on account of said agreement, it might and could have been received from his estate.  And defendant, until the filing of this bill, believed the whole matter was adjusted,—and especially as the said *Roderick D.* assumed the place of the said *Richard D.* on the renewals of the said note, after the death of the said *Richard D.*  This defendant denies that he ever was liable on the said note, Ex. F, in any other manner than as second endorser thereon.  He denies that the drawer of said note, or the first endorser thereon, has any claim whatever on him; that the said *William Hobbs* left ample estate to pay all his debts.

This defendant, further answering, avers, that he never did receive any notice of the refusal of the drawer of said note, Ex. F, to pay the same, or of this defendant being held to pay the same or any part thereof until the filing of this bill, and this defendant does plead and rely upon the statute of limitations of this State, as a full and complete bar and defence to any right of action which may arise on the said note, complainant's Exhibit F, or on the said agreement, complainant's Exhibit D, against him.

And this defendant denies that he is indebted to the complainant in any manner whatever, than for the balance due on the purchase of the said five acres and eighteen perches of land, at the price of $20 an acre, as aforesaid, and for the balance of his said single bill, and he pleads and relies upon the statute

of limitations of the State of *Maryland* aforesaid, as a complete bar to all other pretended claims set up in said bill.

" Memorandum of an agreement between *William Hobbs, of Samuel,* and *Henry Wayman,* sheweth, that the said *William Hobbs, of Samuel,* hath sold unto the said *Henry Wayman,* all that part of a tract of land, called "*Range Declined,*" lying adjoining the turnpike road near where *Woodward* now lives, at $20 per acre, payable $100 annually, with interest; the date of the sale to be fixed by a reference to papers in *Mr. Wayman's* possession—the sale being made some time past. We, having this day settled our other business without including the sale for this land, we make this memorandum to save trouble, in case of accident to either of us.

Witness our hands this 23d June, 1827.

Signed, WM. HOBBS, OF SAM'L,
Witness, *Rod'k Dorsey.* HENRY WAYMAN."

On above is endorsed as follows :

"I hereby acknowledge that *Mr. Henry Wayman* paid my note to *Zachariah Roberts,* dated 7th April, 1818, for $67, on the within land. Signed, WM. HOBBS, OF SAM'L.

*November 29th,* 1839."

COMPLAINANT'S EXHIBIT F.

" *June 16th,* 1829.

" $340. Sixty days after date, I promise to pay to *Roderick Dorsey,* or order, $340, for value received—negotiable at the *Frederick* County Bank, and payable at *George Baer's* house, in *Fredericktown.* WM. HOBBS, OF SAM'L."

" Endorsed, *Roderick Dorsey, Henry Wayman.*

| | | |
|---|---:|---:|
| Note, . . . . . . | $340 00 | |
| Protest, . . . . . . | 3 15 | |
| 1 year, 9 months and 5 days interest, | 35 98 | |
| | ———— | $379 13 |
| Deduct cash in bank, . . . | | 3 57 |
| | | ———— |
| | | $375 56 |

Received of *Roderick Dorsey,* executor of *William Hobbs, of Sam'l,* the above sum. H. DOYLE, *Teller.*

*May 23d,* 1831."

A commission to take proof was then issued, under which a great variety of testimony, in relation to the details of the accounts between the parties, was taken; and the Chancellor passed a decree to account generally.

The auditor reported:

Statement No. 1, in which he charged *Henry Wayman*, in account with *Roderick Dorsey*, executor of *William Hobbs, of Samuel*, deceased, with his single bill, of 23d June, 1827, as per Exhibit C, $843; which, after allowances for payments and charges for interest, left due by *H. W.* $278 01, as of 10th March, 1845.

Statement No. 4 related to the same single bill, but allowed further credits for payments, leaving a balance due of $77 35.

Statement No. 2 charged *H. Wayman* with the 5 acres and 18 perches of land and interest, $72 71.

Account A charged *H. Wayman* with the two balances of $77 35 and $72 71, and interest—amounting to $150 06.

To these accounts, both parties excepted.

On the 19th March, 1845, the Chancellor (BLAND) ratified Account A and dismissed the bill, as against all other defendants than *Wayman*.

The complainant appealed to this court.

The cause was argued at December term, 1846, before ARCHER, C. J., CHAMBERS, SPENCE and MARTIN, J.

By ALEXANDER for the appellant, and

By WIRT and RANDALL for the appellees.

ARCHER, C. J., delivered the opinion of this court.

The agreement for the sale of land, called "*Range Declined*," contains no sufficient description of the land sold. It is described, as being all that part of "*Range Declined*," lying adjoining the turnpike. Thus, the contract gives only the line adjoining the turnpike; what are the other courses and distances of the land sold, cannot be known from the agreement itself, or by any thing referred to in it. Such an agreement,

we apprehend, we could not enforce further, than as admitted by the defendant. To this extent, the Chancellor has decreed against the defendant, and he concedes, that to this extent, the decree is not objectionable. Independent of the above consideration, the evidence as to the bounds and quantity of land sold, is uncertain and indefinite.

As the *second* ground of appeal, it is conceded by the answer, that the sum credited to the single bill, was paid on the note; but, that *Hobbs* had agreed that it should be credited on the single bill.

Exhibit No. 2, filed with the answers, shows, that the sum in dispute was paid on the note, and there is no evidence of the existence of any such agreement to change the application of the payment. When the amount was paid by *Wayman*, it is not pretended he was ignorant of the facts upon which his liability depended, and if the claim was legally invalid, having *voluntarily* paid the amount in controversy on the note, he cannot transfer the amount from the note to the single bill.

We cannot perceive there is any other credit than the above, and what has been allowed on the single bill, established as against the claim of the complainant on the single bill. The order of *Steene*, in favor of *Wayman*, was long anterior to the settlement recognized by the agreement of 1827, and must in the present state of the pleadings and evidence be considered as closed.

The claim No. 3, we do not think is established. The agreement between *Richard Dorsey* and *Wayman*, is unintelligible. The answer avers, that *Wayman* was only a security for *Richard Dorsey*, that he would pay one-half the loss which might be sustained.

*William Hobbs* and *Richard Dorsey*, having agreed each to sustain one-half the loss—the only testimony we have, in relation to the agreement under which the note of *Wm. Hobbs* was originally discounted—is proved by the declarations of *Wayman*, made evidence by the complainant's 12th Interrogatory, filed with the first commission. This evidence sustains the answer, and proves that *Wayman* was only the security of *Richard*

*Dorsey* in the endorsement; that *Dorsey's* estate was amply sufficient to have paid his liability, yet, that no claim was presented until after *Dorsey's* estate was settled up, when he could have no recourse for indemnity against *Dorsey's* estate.

Believing this to be the only evidence operating on the case, and assuming it to have been the real transaction between the parties, we do not think that *Wayman* was answerable to *Hobbs'* estate for the deficiency, if it be true, as averred in the bill, that *Richard Dorsey* was discharged from his liability.

*Wayman's* consent to *Dorsey's* discharge is not, we think, indicated by his continued endorsements and payments of discounts. The bank was no party to the agreement by which he became security for *Richard Dorsey*, and, as regards the bank, he was bound as an endorsee from time to time, to provide for his note. In this way, the renewal of the notes may be accounted for, without attributing such renewal to any consent on his part to *Richard Dorsey's* discharge.

A decree will be passed, reversing the decree of the Chancellor, and with costs to appellant; directing payment for the balance due on the land admitted by the answer to have been purchased; disallowing the credit of one hundred dollars, which has, by the Auditor, been allowed to the single bill, and disallowing the claim designated as No. 3.

DECREE REVERSED WITH COSTS AND DECREE FOR APPELLANT.