# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed May 6, 1920.

W. ROBY PURNELL, TRADING AS THE PURNELL ART COMPANY,

VS.

JAMES W. BRUTON, ET AL.

*Hyland P. Stewart* and *Warran A. Stewart* for plaintiff.

*Randolph Barton, Jr.*, and *Malcolm H. Lauchheimer* for defendant James W. Bruton.

*Daniel Ellison* for defendants Samuel Krieger, et al.

DAWKINS, J.—

It is sought in this case to prevent the sale of the property No. 309 North Charles street unless the alleged rights of the complainant are reserved, which rights especially are to have a lease executed by the defendant, Bruton, to the complainant company.

The complainant has leased the property in question since 1913; a lease covering the period from 1913 to 1915 was at a yearly rental of $3,250; the terms of this lease were changed in June, 1914, before its expiration, in certain particulars and especially by extending it to the 31st of July, 1920, and increasing the rental to $3,600 per annum and the paying by the tenant of a certain part of the insurance, additional taxes and other items.

It is contended by the complainant that sundry conversations took place during 1919 between himself and the defendant Bruton in regard to a renewal of the lease for a further period from August, 1920. After these conversations, the complainant wrote a proposition of renewal for five years at $4,000 rental per annum, with certain items in regard to paying taxes, etc., which proposition was accepted November 6, 1919, and thereafter there was a verbal confirmation of this written proposition and acceptance. On January 16, 1920, the complainant wrote the defendant asking that the lease be prepared. Practically the same day the defendant informed the complainant that he had sold the property. The lease was not executed. The defendant contends that the letter of November 6, 1919, instead of being an acceptance of, is a refusal to lease, and this he shows by other correspondence, all of which it is alleged tends to show that no agreement to lease was ever made and accepted.

The defendant is quite deaf. I am constrained to believe that much of the variance in the testimony is due to that infirmity. With the conflict on such points as are material, I feel that I can not depend upon the recollection of the parties entirely, but shall be compelled to rely very much, if not entirely, upon the written documents filed in the case, to determine whether or not any enforceable lease was ever agreed upon by the parties.

On October 14, 1919, Mr. Purnell wrote that he will "make the following propositions, which I hope will be

agreeable to you. That the rent be $4,000 per year, you to pay all taxes and insurance on the building, to keep the glass windows insured and also to be responsible for any repairs or alterations in the walls. To keep the roof and down-spouting in good condition. Of course, any change to the interior of the building would be made at my expense. Kindly give this matter your consideration and let me hear from you as soon as you reach a decision."

To this letter the defendant wrote on October 20, 1919: "I do not see how I can come to your terms," and proceeds to give higher taxes, etc., as a reason, ending the letter: "Trusting that we may be able to get together in this matter."

The plaintiff wrote in reply to this letter on October 25, 1919: "Kindly let me have your views as to rent," etc.

On October 30, 1919, the defendant wrote: "To be frank with you in this, I do not think there is any prospect of our coming to an agreement at anything like the figure you name, $4,000. * * * If you do not feel justified in giving above the figure you have named I can only believe it best for both parties to seek different arrangements at the termination of the present lease." On November 1, Mr. Purnell asked that the figure for the new lease be given. On November 6 Mr. Bruton wrote that he still considered his "offer of $400 a month binding." "If after due consideration of the matter you feel that this is more than you care to pay I shall be glad to hear from you, as I do not see how I can decline the other offers" (of $5,000 to $6,000 per year).

Mr. Purnell's letter of November 10 asks that Mr. Bruton call to see him, saying: "I am sure we will be able to come to a mutual satisfactory agreement regarding a new lease." On December 9, 1919, Mr. Purnell again asked that Mr. Bruton call. Except for the conversations that took place in the store at the time of the visit there by Mr. Bruton, the details of which is differently remembered by the parties, nothing else was done until the letter of January 16, 1920, when Mr. Purnell wrote that he had gained an impression as to the willingness on the part of Mr. Bruton to make certain repairs, and then asked: "Will you prepare the lease or shall I have it done. I would prefer it for a term of six years,

instead of five, if this is agreeable to you."

There is no discussion or agreement as to the other terms and items in regard to the other details of the early offers. Whether or not they were disposed of in the different conversations the court has no very definite way of telling. The defendant gives an entirely different version of what occured in the phone and other conversations from that given by the complainant. The court can not enforce a contract unless it be definite. Certainly there is a grave doubt as to the meeting of the minds (88 Md. 511, Horner vs. Woodland; 101 Md., Somerville vs. Coppage, page 524, and Linthicum Heights case, 124 Md. 276).

The case of Sprague vs. Jessop, 85 Pacific 145, referred to in the supplemental brief handed the court by plaintiff's counsel, announces the safe principle that a mere denial should not defeat the right to enforce an oral contract, but the defendants' statements are entitled to as much consideration as are those of the plaintiff, unless there be some circumstances to cause the court to place more faith in the statement of one than in the other. The burden is on the plaintiff to prove his case.

It was earnestly argued by the counsel for the plaintiff that repairs, etc., and other items mentioned in the letters had nothing to do with the lease. The court can not agree with this contention because, save for these things, the lease would no doubt have been executed in the fall of 1919. There is much of the testimony that might be compared as to its reasonableness, but it would seem to be unnecessary to do this. For the very able brief furnished by the plaintiff's counsel the court is indebted. Many of the questions suggested in the cases cited are in no way involved in this case. This is another of the many cases presented in this court wherein, save for the large prices now commanded by real estate in the present frenzy of exaggerated advances in prices, would never have arisen. The conclusion reached may work a hardship on the plaintiff, but yet the court can not make and enforce a contract for the parties that (unfortunately for the complainant, perhaps) has not been made by themselves.

The bill will be dismissed.