GEORGE R. RICHARDSON, AND OTHERS, *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.—*December*, 1849.

Upon a bill filed by the appellants, alleging that the damages for the opening and extension of certain streets in the city of *Baltimore*, secured to them by the act of 1837, ch. 358, had not been assessed to them by the street commissioners of said city, in their proceedings for the extension of said streets, and that upon appeal to the city court, the jury had, also, in their assessment of damages, made no assessment of damages to the complainants, who were, thereby, absolutely denied the rights vested in them by said act, the chancellor granted an injunction restraining the appellee from collecting the assessments made by the jury. The answer of the appellee averred, that the provisions of said act of Assembly were especially brought to the attention of the jury, and fully discussed, and deliberately considered by them, and the chancellor thereupon ordered the injunction to be dissolved, which order was affirmed upon appeal.

Courts of equity will interfere where courts of ordinary jurisdiction are inadequate instruments of justice, to restrain the assertion of doubtful rights in a manner productive of irreparable damage, and to prevent injury to third persons by the doubtful title of others.

The chancery court has no right to interfere to arrest the proceedings or the

judgment of *Baltimore* city court, on the ground of legal error; it has no supervisory power over courts of law.

To justify the interposition of equity, there must be some inequitable advantage taken, which would render it unconscientious in the party obtaining it, to enforce the judgment, and of which the party seeking the aid of equity could not have availed himself at law, or was prevented from doing so by fraud or accident, or the act of the opposite party unmixed with any fraud or negligence on his part.

Appeal from the *Court of Chancery*.

The legislature, by the act of 1837, ch. 358, appointed certain commissioners "to open and condemn, as public highways forever, all such streets, lanes and alleys, or such parts thereof, within the bounds of the estate of the late *David Moore*, and within the limits of the city of *Baltimore*, as they may deem advisable." The 2nd section of this act provides: "That if at any time hereafter, any of the above mentioned streets, lanes or alleys shall be further opened and extended beyond the limits of the said estate, and any part or parts of the said estate shall be taxed for such opening or extension, then and in such case, the proprietor or proprietors of any and every such part or parts so taxed, shall be considered as entitled to one-half of the bed of the street immediately in front of such part or parts, and shall be entitled to damages for the taking of the same, in the same manner as he, she or they might do, if the said street were then to be first opened and made public."

These commissioners opened and laid out *Biddle* and *Orchard* streets, within the limits of said estate, and the appellants purchased lots upon them, and became proprietors of a part of said estate.

Subsequently, on the 13th of March, 1847, the appellee, the *Mayor and City Council of Baltimore*, in pursuance of the powers vested in them by the act of 1838, ch. 226, and in pursuance of the general ordinance of the 15th of May, 1846, relating to streets, upon the application of one *Richard Dorsey*, passed an ordinance to extend *Orchard* street from *Tessier* street to *Pennsyluania* avenue. This extension was beyond the limits of said *Moore's* estate. The street commissioners, in

execution of this ordinance, proceeded to assess damages and benefits, and made their return thereof to the register of the city. These assessments are stated in the opinion of the chancellor.

The appellants and others, considering themselves aggrieved by these proceedings, on the 21st of October, appealed to *Baltimore* city court, according to the act of Assembly, providing for such appeal. The city court appointed the 26th of February, 1848, for hearing this appeal. The cause was then postponed, from time to time, until the 13th of July, 1848, when the appellants filed in said city court a motion to quash the proceedings and return of the said commissioners, because, by the act of 1837, ch. 358, said commissioners were bound to assess, for injuries, the lots of those persons on *Orchard* street, who claim under the representatives of *David Moore*, constituting half the bed of said street above *Tessier* street, which is wholly omitted; and on the same day said court passed the following order: "The commissioners appointed to open *Orchard* street to *Pennsylvania* avenue, not having complied with the provisions of the act of 1837, ch. 358, in the assessment of damages, but having made their assessment in total disregard of said act of Assembly, the court, on motion of the appellants' counsel, order the proceedings to be quashed."

On the 13th of September, following, the *Mayor and City Council* filed a petition in said cause, in which, after calling the attention of the city court to the act of 1838, ch. 226, and the general ordinance of the 15th of May, 1846, the 9th section of which ordinance provides, that the judges of said city court shall not reject or set aside the record of proceedings of the street commissioners, for any defect or omission, either in form or substance, but shall amend or supply all such defects and omissions, and increase or reduce the amount of damages and benefits assessed, and alter, modify and correct said return in all or any of its parts, as they, or a majority of them, shall deem just and proper, and to the fact that this revisory power of the city court has been fully sustained by the Court of Appeals, they pray that a day may be fixed for hearing the

appeal, and the ascertainment, by a jury, of damages and benefits.

On the 18th of September, the said court ordered the following opinion to be filed: "The city commissioners, appointed for opening *Orchard* street, have confined themselves, in their calculations, only to the part of the street extended to *Pennsylvania* avenue; whereas, by the act of Assembly, 1837, ch. 358, it was their duty to have valued the property on that part of the street already opened by special commissioners, making those allowances for the beds of streets as directed by said law. Their valuation will, no doubt, cause some alterations to be made in the valuation returned for the extended part under the ordinance, and of course will require a revision of the whole. The court would, if they had the power, order the commissioners to review and amend their proceedings, so that the whole case should come before the court on the appeal, but as the city council have prescribed a different mode of proceeding, authorising the court, only at their discretion, to empannel a jury for the decision of any facts omitted to be considered by the commissioners, and generally to review and report the whole case, have ordered, and hereby order the clerk of the court to issue a *venire* for a jury in said case, forthwith." And on the 20th of the same month, passed the following order: "The court being full, reconsider and rescind the order made on the 13th day of July, 1848, to quash the proceedings in the *Orchard* street appeals, and now order and direct that a *venire* issue in said case, returnable on the ——— day of ——— next, at 10 o'clock, A. M., to hear and determine on said appeals." And on the same day an entry of an appeal was made in the case by the appellants.

On the 5th of October following, the *Mayor and City Council* filed another petition, averring that the judgment of the city court, in the premises, is final and conclusive, and that the proceedings should not be delayed by the entry of the said appeal. This petition also calls the attention of the court to the fact, that no day had been appointed by them for the return of the

OF MARYLAND. 437

Richardson, *et al.*, *vs.* Mayor and City Council of Baltimore—1849.

*venire*, and prays that an early day be fixed for the return thereof.

On the 7th of November, the *venire* was issued, and made returnable the next day, when the jury thereby summoned, was duly sworn, as a jury of inquest for the trial of said appeal; and on the 28th of November, they rendered their inquisition, assessing damages to certain persons named, amounting to $3,829.18, and expenses to the amount of $435.74, and benefits to be paid by certain persons named, among whom are the appellants, to the amount of $3,835.92, and sale of materials amounting to $429. On the same day the appellants made objection to the receipt of the aforesaid inquisition, but assigned no reasons; and on the 11th of December, the court passed an order approving and confirming this inquisition.

The register being about to proceed to collect the benefits assessed by these proceedings, the appellants, as proprietors of parts of the estate of said *David Moore*, filed their bill on the 27th of December, 1848, praying for an injunction to restrain the said *Mayor and City Council* from proceeding to collect the said sums assessed upon them, and for general relief. And on the same day the chancellor (JOHNSON,) ordered the writ of injunction to issue, as prayed.

The allegations of the bill, and of the answers thereto, are fully stated in the following opinion of the chancellor, delivered on passing the order dissolving the injunction:

"The prayer of the bill in this case does not seek, nor did the injunction granted by this court prohibit the defendants from proceeding to open and extend the street in question, though it may be that the interdiction to collect the sums assessed upon the complainants, and others similarly situated, might have the effect to delay it.

"Upon the facts stated in the bill, the chancellor thought this court had jurisdiction to prevent the assertion of the right claimed for the *Mayor and City Council of Baltimore*, and ought to exercise its power, because the assertion of that right, would be productive of irreparable damage to the complainants. If the provisions of the 2nd section of the act of 1837, ch.

438        CASES IN THE COURT OF APPEALS

Richardson, *et al.*, *vs.* Mayor and City Council of Baltimore.—1849.

358, were totally disregarded by the jury, in estimating the sums to be paid by the proprietors of the estate of *David Moore*, then it seemed very clear that a wrong would be inflicted upon the complainants, for which, without the interposition of this court, there could be no redress.

"It is not easy to define, with accuracy, the powers and duties of this court, and any attempt to do so, has been said, by a learned judge, to be perilous and unsatisfactory; but the general enumeration of these powers and duties, as given by *Lord Redesdale*, and which will be found in *Mitford's Eq. Pl.*, by *Jeremy*, 111, 112, is considered, by *Mr. Justice Story*, as perfect as the nature of the undertaking will admit of. In that enumeration it is said, among other things, that the jurisdiction of the court, 'when it assumes a power of decision, is to be exercised where the courts of ordinary jurisdiction are inadequate instruments of justice.' 'To restrain the assertion of doubtful rights in a manner productive of irreparable damage, and to prevent injury to a third person, by the doubtful title of others.' It appeared to me that the right and duty of this court to interfere in this case, was vindicated by these principles. The legislature, by the act referred to, had declared, in explicit terms, that, in a certain event, the proprietors of the estate of the late *David Moore*, should be entitled to damages for one-half of the bed of the street or streets which should be opened through their property; and the bill alleged, that though the event had happened, and the burden referred to had been imposed upon them, the compensatory advantage had been denied them. The allegation of the bill is, 'that the commissioners for opening streets, though notified of the act of Assembly, did not award the proprietors any damages for taking one-half of the bed of the street immediately in front of them, as directed and enjoined by the said law, and that upon appeal by them from the act of the commissioners, and after the *Baltimore* city court had quashed their return, and submitted the question to a jury, the jury so ordered by the court, made no assessment of damages to the owners of the property,' &c., and that this finding of the jury was confirmed by the court. The

OF MARYLAND. 439

Richardson, *et al.*, *vs.* Mayor and City Council of Baltimore.—1849.

allegation, therefore, in effect, was, that the complainants had been, by the commissioners and the jury, altogether and absolutely denied the rights conferred upon and vested in them by the legislature; and this, it appeared to me, was not only asserting against these complainants a doubtful title in another, productive of irreparable mischief, but would be permitting the power of the city court to be wielded as an instrument of injustice.

" It was not intended to assume for this court the right to interfere to arrest the proceedings or the judgment of *Baltimore* city court, upon the ground of legal error. This court has no supervisory power over courts of law. If they err, the remedy is by way of appeal, and if there is no appeal, the parties must submit. To maintain the right of this court to examine and correct the errors of *Baltimore* city court, would, as was said by the Court of Appeals, in the case of the *Methodist Protestant Church vs. The Mayor and City Council of Baltimore*, 6 *Gill*, 391, 'be claiming for it appellate authority, where it is wholly incompetent to administer justice, and render full and adequate relief to all concerned.' This court claims no such power, and never interferes, as was said by the court, in the same case, 'unless prompted by conscience, to prevent wrong and injustice, but leaves the party, complainant, to his remedy at law.' Mere error in a court of law, in the estimation of this court, furnishes no ground for its interposition. There must be something else; some inequitable advantage taken, which would render it unconscientious in the party obtaining it, to enforce the judgment, and ' of which the party seeking the aid of equity could not have availed himself at law, or was prevented from doing so by fraud or accident, or the act of the opposite party, unmixed with any fraud or negligence on his part.' *Gott and Wilson, vs. Carr*, 6 *G. & J.*, 309. The bill in this case charges, that the jury made no assessment of damages to the owners of the property, as required by the act of 1837, and as the language of the act was explicit, that such allowance should be made in the event which has happened, it seemed to me that it would be against conscience, to suffer

their award to be enforced.   The power of this court was not exerted because the city court, after quashing the return of the commissioners, had, as was alleged, after the term, opened their judgment, and ordered a jury to rectify their errors.   That, if an error on the part of city court, was a legal error which this court has no right to supervise and rectify, because in doing so, the powers of an appellate tribunal would be usurped, which this court disclaims.

" Supposing the case made by the bill, was a proper one for the interference of this court by injunction, it remains to be seen, whether, as the case now stands, upon the answer and the accompanying exhibits, it should be continued.

" If it appears that the rights of the complainants, founded upon the act of Assembly, were considered by the jury, it would not be in accordance with the principles which have been stated as governing this court, to disturb or obstruct the execution of the decision to which they have come.   The bill expressly alleges, that the jury made no assessment of damages to the owners of the property in question.   This the answer denies, and avers, that the provisions of the act of Assembly, under which the damages are claimed, were specially brought to the attention of the jury, and fully discussed, and deliberately considered by them.   And the record of the proceedings in the city court, shows that the return of the commissioners was quashed by that court, upon the express ground that they had not complied with the provisions of the law.   The language of the court being, that 'the commissioners appointed to open Orchard street to Pennsylvania avenue, not having complied with the provisions of the act of 1837, ch. 358, in the assessment of damages, but having made their assessment in total disregard of said act of Assembly, the court, on motion of the appellants' counsel, order the proceedings to be quashed.'   This order was passed on the 13th of July, 1848, and in September of the same year, the Mayor and City Council of Baltimore filed their petition in the cause, in which, after setting out the proceedings which had taken place up to that time, and after referring the court to the provisions of the ordinance of the city,

of the 15th of May, 1846, No. 59, and to the 9th section thereof, by which it was declared, that the judges of the city court should not set aside or reject the proceedings of the street commissioners, for form or substance, but should amend or supply all such defects and omissions, and increase or reduce the amount of damages and benefits assessed, and alter and modify and correct the said return of proceedings as the judges, or a majority of them, should deem just and proper; they pray that a day may be fixed for hearing the appeal, and the ascertainment by a jury of damages and benefits.

" Upon this petition, the court, at the same term, pronounced its judgment, in which it declares, that the commissioners appointed for opening *Orchard* street, (by ordinance No. 9 of 1847,) having confined themselves in their calculations only to the part of the street extended to *Pennsylvania* avenue, whereas, by the act of 1837, ch. 358, it was their duty to value the property on that part of the street already opened by special commissioners, making the allowances for the beds of streets as directed by said law, and then, after declaring that alterations would have to be made in the valuations returned, which would require a revision of the whole, they direct a *venire* to issue for a jury, as the only mode left to them by the ordinance of the city, referred to in the petition. The *venire* issued accordingly, and the jury, on the 8th of November of the same year, formed a verdict, in and by which certain persons were allowed damages, amounting in the aggregate to the sum of $3,829.18, and that the expenses were $435.74; and that certain other persons, among whom are the complainants, should pay certain sums for benefits estimated by the jury, to result to them from opening and extending the street. These sums amount in the whole to $3,835.02, which sum, added to the amount for which the materials sold, being $429, made the aggregate equal to the sum of the damages.

" That this court is not at liberty to supervise and examine the proceedings and judgment of the city court with respect to these averments, has been expressly adjudicated by the Court of Appeals, in the case of *Alexander and Wilson, against The*

*Mayor and City Council of Baltimore*, 5 *Gill*, 383, and in the same case it was likewise decided, that the act of 1838, ch. 226, and the ordinance of the city, passed in pursuance thereof, and by which the city court was governed, is a valid exercise of legislative power. The return of the commissioners to open the street under the ordinance No. 9 of 1847, was, we have seen, set aside, upon the express ground that they had disregarded the provisions of the act of 1837, ch. 358, and the case was sent to a jury, that the proper correction might be effected and allowances made for the beds of the streets, previously opened by the special commissioners under that act, and it is therefore not to be presumed, that in the consideration of the case by the jury, the same error was committed. On the contrary, the presumption is strong, not to say irresistible, that the jury did make the proper estimate and allowance, and that the damages to which, in their judgment, the owners of *Moore's* property were entitled under the act for the bed of the street, were deducted from benefits which they believed these owners would derive from its extension. This presumption is strengthened by the fact, that a reduction was made by the jury from the amount of benefits estimated by the commissioners.

| | | |
|---|---|---|
| The estimate of benefits by the latter was, | - | $4,001 10 |
| Whilst the jury put them at, | - - - | 3,835 92 |
| Making a difference of, | - - - | $165 18 |

" It may be that this estimate is erroneous, but over the judgment of the jury in this respect, as is perfectly well settled, this court has no control. If the jury, instead of deducting the damages from the benefits, had given, in separate columns, the amount of each, it would certainly have been more satisfactory, but their omission to do so should not, I think, vitiate their proceedings after their verdict has been affirmed by the court.

" The inquisition was found on the 28th of November, 1848, and the record shows, that on the same day, objection was made on the part of some of the proprietors of *Moore's* property

to its receipt by the court, but the ground of the objection is not stated; and on the 2nd of the then ensuing month of December, the verdict of the jury was confirmed by the court, and the inquisition, subsequently under the order of the court, returned to the register of the city of *Baltimore*, in conformity with the ordinance. Under all the circumstances of the case, as disclosed by the proceedings now before the court, it is, I think, impossible to say that the complainants have not had the benefit of the act of 1837, ch. 358, and have not substantially received such damages as the proper tribunal thought them entitled to under the law, and in this connection it is worthy of remark, that though the bill alleges that the jury made no assessment of damages to the owner of the estate of *Moore*, for one-half the beds of the streets, as provided by the act, it does not allege that the act itself was brought to the notice of the jury, and that though notified, they made no award of damages, as had been alleged with regard to the street commissioners. The presumption is most powerful, that the jury were required to consider this act, and to give such damages to the complainants as they might think them entitled to, and though the inquisition might have been in a form which would have shown this more satisfactorily, I do not, on that account, conceive that I have a right to forbid its execution by injunction.

"It was urged in the argument, that the legislature, by the act of 1838, ch. 226, and the corporation of *Baltimore* city, by their ordinance passed in pursuance thereof, could not take from the owners of *Moore's* property rights vested in them by the act of 1837, and this is a proposition which, it is supposed, will not be disputed; but the act and ordinance in question here had no such effect. The legislature, by the act of 1838, vested certain powers in the corporation of *Baltimore* in relation to streets, and the ordinance provides a mode for executing those powers, and both act and ordinance have received the sanction of the Court of Appeals. The mode pointed out for opening streets has been pursued, not as has been said in derogation of the rights of the complainants under the act of 1837,

but in subordination to them.    So far from supposing that any rights vested in the complainants were taken away by the act of 1838, and the ordinance of the city, we have seen that the city court set aside the return of the commissioners, upon the express ground that they had disregarded those rights and sent the case to a jury, for the very purpose of giving the complainants the compensation which, under the law of 1837, they were entitled to, and although the jury may have erred in their estimate of the value of those rights, and may not, by the form of their verdict, have stated in the most distinct manner the amount of the compensation which they did allow, these are subjects over which this court can exercise no control. Upon the whole, I am of opinion the injunction should be dissolved.

From the order dissolving the injunction, the complainants appealed.

The cause was argued before Dorsey, C. J., Chambers, Magruder, and Frick, J.

Pratt, for the appellants, argued:

1st. That the appellants, as proprietors of parts of *David Moore's* estate, lying upon *Orchard* street, opened by the commissioners named in the act of 1837, ch. 358, were taxed for the extension of said street beyond the limits of *Moore's* estate, and were, consequently, entitled, by the express provisions of the act of 1837, to be considered as entitled to one-half of the bed of the street immediately in front of the part so owned by them, and were entitled to "damages for the taking of the same."

2nd. That by the inquisition of the jury, which was ratified by *Baltimore* city court, no such damage was allowed to the appellants.

3rd. That the proceedings under which said street was extended, were upon appeal quashed by *Baltimore* city court, at May term, 1848, and that the recision of that order, at a *subsequent term* of the court, was illegal.

4th. That for the manifest violation of their rights, secured by the act of 1837, ch. 358, by means of the illegal recision of the order of May term, 1848, the appellants have no remedy except in chancery; that the injunction was properly granted upon the case stated in the bill, and was improperly dissolved at the hearing.

PRESSTMAN, for the appellee, contended :

1st. That the damages granted to the appellants by the act of 1837, were considered by jury and allowed by them in their inquisition.

2nd. That *Baltimore* city court committed no error in rescinding their order granting the return of the street commissioners; and—

3rd. If such error was committed by said city court, it is a mere legal error, which the court of chancery has no power or authority to correct.

BY THE COURT—

ORDER AFFIRMED, WITH COSTS.