Sisk *et al. vs.* Garey.

(Decided 12th July, 1867.)

---

FRANCIS A. SISK and others *vs.* THOMAS F. GAREY.

*Fraud—Injunction to restrain Proceedings at Law— Award—Evidence.*

Fraud is sometimes a legal inference from the conduct of the parties, without regard to their intent.

In all cases where the interposition of a Court of Equity is sought to restrain proceedings at law, the first inquiry is, whether the party seeking such interposition had an adequate defence at law, and secondly whether he was deprived of the opportunity of making such defence, by fraud, surprise, or inevitable accident or mistake, without any default of his own.

When a suit is brought at common law, upon an award, no extrinsic circumstances, or matter of fact, *dehors* the award, can be pleaded, or given in evidence, to defeat it. Thus, for example, fraud, partiality, misconduct or mistake of the arbitrators, is not admissible to defeat it. But Courts of Equity will in all such cases, grant relief, and upon due proofs, will set aside the award.

Where certain matters were submitted to arbitration, and the parties appeared before the arbitrators, and each filed a statement setting forth his charges, demands and claims against the other, and after the hearing was closed, the arbitrators received a statement from one of the parties, containing new and different items of claim from any presented at the hearing, and without the knowledge of the other party, a Court of Equity will enjoin a suit at law upon the award, and set it aside.

Where a rule was laid to employ new counsel, and upon a non-compliance with the exigency of the same, the case was entered "off under the rule," the absence from the docket of the entries, "rule issued and returned served," indicates that the rule was never issued or served.

APPEAL from the Equity side of the Circuit Court for Caroline County.

On the 27th of May, 1856, the appellant Sisk, as sheriff of Caroline county, sold under a *fieri facias* issued out of said Court, upon the judgment of *Smith, Knowles & Co. vs. John Layton,* entered to the use of the appellee, certain mill property of said Layton, known as "Potter's Mills." The appellee became the purchaser for the sum of two thousand dollars, and executed his single bill to the appellant Sisk, as sheriff, for the purchase money, payable on demand. On the 11th of October, 1856, the appellee paid Sisk fifty dollars on account of said single bill. Afterwards, certain differences having arisen between them as to fees due from the one to the other, (the appellee having been clerk of the Circuit Court for said county, and the appellant the sheriff of said county,) and also in regard to various other matters of account between them, they on the 7th of June, 1860, entered into an agreement to submit the same to the arbitration of J. Hopkins Tarr and George M. Russum, and executed mutual bonds to abide by and perform the award of said

arbitrators in the premises. The terms of submission were of " all and all manner of action and actions, cause and causes of action or actions, suits, bills, bonds, specialties, judgments, executions, accounts, debts, dues, sum and sums of money and demands, whatsoever, both in law and in equity or otherwise, however, which at any time or times heretofore have been had, made, moved, brought, commenced, sued, prosecuted, committed, omitted, done or suffered by or between the said parties or either of them ;" and the awards were to be made before the first of July next ensuing. The parties appeared in the presence of each other before the arbitrators, in pursuance to notice given, and each filed his account against the other. After both parties had left the arbitrators, Sisk returned and laid before them the appellee's note to him, as sheriff, dated 27th May, 1856, for two thousand dollars, and a claim of execution of Henry Mobray, use of Sisk *vs.* James H. Spencer and Ennalls Hubbard. Upon these accounts the arbitrators, on the 30th day of June, 1860, made their award, accompanied by statements showing what they found due to and from the parties respectively, and awarding to Sisk the sum of two thousand three hundred and eighteen dollars and ninety cents. The appellee being dissatisfied with the award, and claiming that he held a set-off to his note for two thousand dollars, being the oldest judgments against John Layton, held by and transferred to himself, the arbitrators requested of Sisk his consent to the re-opening of the award, which he refused, whereupon they, at the request of the appellee, executed a certificate bearing date on the 9th day of July, 1860, wherein they certified that the execution of Henry Mobray was not endorsed or assumed by the appellee ; and that so far as they were informed, he had no notice that the aforesaid note of $2,000, which specified that the same was to be applied to the preference claims against said Layton, would be

presented in the arbitration of the disputes of Sisk and himself concerning fees, &c. At the October Term, 1860, the appellant Sisk, brought suit on the arbitration bond, and the appellee appeared by counsel. The case was continued under a rule *narr.* to March Term, 1861, when leave was granted to amend the writ by the *narr.* so as to make it a suit on the award. At March Term, 1862, there was a motion by the counsel for the appellant Sisk, for a judgment for want of a plea. On the 13th of March, 1862, a bill was filed by John M. Robinson, on behalf of the appellee, against the appellants, to set aside the award, and for an injunction to restrain them from prosecuting said suit. An injunction was granted on this bill, to which an answer was filed by the appellant Sisk, on the 9th of October, 1863, only after an attachment had been issued and served upon him to compel an answer. On the 8th of July, 1864, a commission was issued to James B. Steele to take testimony, and on the 29th of March, 1865, a rule was laid on the Commissioner to return the commission, and on the 11th of July following the commission was returned. On the 16th of January, 1865, a rule was laid on the appellee to employ new counsel, Mr. Robinson having become disqualified to act as such, by his election as Judge for the Tenth Circuit; and on the 4th of September following, the case was entered " off under the rule." At October Term, 1865, in the suit on the award, a judgment was entered under the rule, " for want of a plea;" and on the 30th of August, 1866, a *fieri facias* was issued on this judgment. On the 6th of December following, the bill in this case was filed, asking for an injunction to restrain the appellants from enforcing the aforesaid execution. On the 26th of the same month, the injunction issued as prayed. On the 16th of January, 1867, the appellant Sisk filed his answer, and a motion for a dissolution of the injunction, which was set down for hearing on the 29th of the same month. On the 4th of

February following, an order was passed overruling the motion for a dissolution of the injunction, and continuing the same until the further order of the Court. From this order the present appeal was taken.

The cause was argued before Bowie, C. J., Bartol and Weisel, J.

*George M. Russum,* for the appellants, argued:

That the injunction should have been dissolved, because the remedy at law was adequate. The powers of arbitrators are exactly defined in all cases, by the language of their appointment, whether it be found in a *rule of Court* or in the *contract of submission*. In both cases their proceedings are the same, and the question, what was covered by the terms of submission, must be decided by the principles of the common law. *Shriver vs. The State of Maryland,* 9 *G. & J.,* 11, 13.

If the matters and things considered and determined by the arbitrators were *not* within the terms of the submission, the award was *void*. *Cromwell vs. Owings,* 6 *H. & J.,* 14; *Hewitt vs. The State,* 6 *H. & J.,* 98; *Bouvier's Law Dict., Tit. Award.*

If, as we contend, the award be within the terms of submission, the remedy at law was equally adequate. The submission was of all matters in dispute, " at law and equity, or otherwise,'' which included transactions of an official or representative character. *Caldwell on Arbitration,* 235, *note* 1.

That such was the understanding of *both* the parties, reference need only be had to accounts B and C. Account C, filed by the appellee, shows that the *principal* item of his claim against the appellant Sisk was for fees due the former as late *clerk,* and placed in the hands of the latter as "sheriff.'' The certificate of the arbitrators dated July 9th, 1860, shows that the alleged set-off of

the appellee was *not before them* and *not considered* in making up their award. The suit was on the *award* and not on the submission, as is admitted in the bill. This alleged set-off could then have been *plead in bar* to show nothing due on the award; for the award could be *final* and *conclusive* only as to the subjects *embraced in the submission* and *considered* in making up the award. 2 *Starkie on Evidence,* 119, *side page and note A, and* 119, *top page and note A ; Caldwell on Arbitration,* 407, *note* 1; *Shriver vs. The State of Maryland,* 9 *G. & J.,* 13, 14.

The bill charges neither *fraud, accident* nor *mistake* on the part of the *arbitrators ;* nor is any fraud alleged in obtaining the *judgment on the award.* It admits the debt, and the alleged set-off is fully and flatly denied by the answer. The whole aim is to procure the interposition of a Court of Equity, in order that the appellee may have the benefit of an alleged claim clearly within the terms of the submission, and which was *kept back* from the arbitrators, and thus to have a *presumption* raised *by the Court* for the sake of overturning the award—setting aside the judgment of the arbitrators on *facts* as to which their judgment is *final,* and inquiring generally into the *merits* of the award—which a Court of Equity will not do. *Caldwell on Arbitration,* 241, 279, *note* 2 ; *Cook vs. Murphy,* 7 *G. & J.,* 282 ; *Cromwell vs. Owings,* 6 *H. & J.,* 12.

If the appellee had any claim against the appellant Sisk on account of the alleged judgments, he had his election to proceed at law upon the sheriff's bond, or to settle it in any other way; and having elected to settle by arbitration, and *neglected to bring it before the arbitrators,* and to plead it in bar, to show nothing due on the award, no principle of equity will permit him to avail himself of this Court to protect himself against his own *laches.*

All the equities of the bill, if it had any, are sworn away. It is denied that the appellee has any property or

right in the pretended judgments against John Layton and Layton and Loockerman, it is averred that they are paid—all fraud, and all alleged intended fraud are denied most emphatically. The answer being thoroughly responsive, all its allegations on this hearing must be taken as true. *Dorsey et al. vs. Hagerstown Bank et al.,* 17 *Md. Rep.,* 408 ; *Colvin vs. Warford et al.,* 17 *Md. Rep.,* 433.

But, it is claimed that there *was* an injunction and that it abated under a rule that was never served. There is no proof of this, and besides, it was not necessary that it should be. The rule to employ new counsel is not the offspring of any mandate of the *law,* but of the courtesy of the bar, and the want of it would not vitiate the judgment. *Evans' Practice,* 243 ; *Munnikuyson vs. Dorsett,* 2 *H. & G.,* 374.

It is unknown to the Chancery practice of Maryland. Besides, the rule laid on the Commissioner to take testimony on the 29th March, 1865, to return the commission by the next July Term, was equivalent to a *rule for further proceedings,* and sufficient to warrant the counsel for the appellants in insisting on their rights on the 4th day of September following, at which time the injunction case was stricken off. Again, the bill alleges that Mr. Robinson was elected Judge in November, 1864. The law disqualified him from further continuing the practice of his profession, and the ignorance of it by the appellee is no excuse. If he were the *only* solicitor, the law *presumes* the appellee had notice from November, 1864, to September, 1865, that he had no counsel in Court. Further, the record shows that Thomas H. Kemp and J. Hopkins Tarr, Esqrs., were *both* counsel in the suit on the *award* from October Term, 1860. They could not be counsel *at law* and not in *equity,* for it was in all its essentials the same case, and in the same Court. If the counsel in the suit on the *award* knew nothing of the *injunction,* why did they not plead ? If the injunction and its dissolution

were of such notoriety that the *Court* should notice it, why not the counsel of the appellee in the suit at law, who were at once the *officers of the Court* and his confidential advisers, bound to protect his interests? That the appellee regarded Mr. Kemp as associate solicitor with Mr. Robinson, we need refer only to the affidavit of Mr. Kemp accompanying the bill. Mr. Kemp was present in Court when the judgment was taken on the award and assented thereto. No *irregularity* in the proceedings on the award can vest this Court with jurisdiction. *Gardner vs. Jenkins*, 14 *Md. Rept.*, 58; *Fowler vs. Lee*, 10 *G. & J.*, 358; *Boyd et al. vs. Ches. & Ohio Canal Co.*, 17 *Md. Rep.*, 211; *Prather vs. Prather*, 11 *G. & J.*, 110.

*Oliver Miller*, for the appellee.

Before examining the facts of the case, it is proper to refer to a few well established principles and rules of equity practice and equity jurisprudence, applicable to the whole case, and upon which the appellee relies to sustain the order from which this appeal is taken. Where a motion to dissolve an injunction is heard upon bill, answer and exhibits, all the allegations of the bill not denied by the answer are to be taken as true; the defendant can rely only on so much of his answer as is responsive to the bill; matter in avoidance cannot be allowed to have any effect. An injunction can only be dissolved by positive contradictory averments in the answer, responsive to the allegations in the bill and within the personal knowledge of the defendant. If any material allegation remains unanswered, the injunction will be continued till final hearing. *Doub vs. Barnes et al.*, 4 *Gill*, 1; *Doub vs. Barnes*, 1 *Md. Ch. Dec.*, 127; *Drury vs. Roberts*, 2 *Md. Ch. Dec.*, 157; *Brown vs. Stewart*, 1 *Md. Ch. Dec.*, 87.

Proceedings at law either before or after judgment, will be stayed by an injunction whenever it is necessary, in order to prevent the party from availing himself of an

Sisk *et al. vs.* Garey.

unfair advantage, resulting from fraud, accident or mistake or otherwise, and which would therefore be against conscience. Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a Court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fraud or negligence in himself, will justify an application to a Court of Chancery for an injunction. *Barnes et al. vs. Dodge,* 7 *Gill,* 109 ; *Briesch vs. McCauley,* 7 *Gill,* 189 ; *Little vs. Price,* 1 *Md. Ch. Dec.,* 182.

Where an award is liable to the objection, that it has been obtained through fraud, mistake or accident, either of the parties or arbitrators, or of the miscarriage or misconduct of the arbitrators, or where it is not within the terms of the submission, or where the arbitrators have taken evidence without notice, and out of the presence of one of the parties, a Court of Equity has undoubted jurisdiction, on bill filed, to set aside the award, or restrain by injunction proceedings at law to enforce the award by suit thereon or on the arbitration bond, or restrain execution of such a judgment when obtained. 2 *Story's Eq.,* secs. 1451 to 1463 ; *Adams' Eq.,* 191, 192, 193, *marginal pages ; Emery et al. vs. Owings,* 7 *Gill,* 494 ; *Young and wife et al. vs. Reynold's Ex'rs,* 4 *Md. Rep.,* 381, 382 ; *Young vs. Mackall,* 3 *Md. Ch. Dec.,* 398.

These well established principles and rules are now to be applied to the case at bar, and it is respectfully submitted, that there are many and abundant reasons for the refusal of the Court to dissolve the injunction on bill, answer and exhibits, and continue it till final hearing.

The first ground upon which it is submitted, the injunction ought to be continued is this : The bill alleges in substance, that the parties appeared in the presence of each other before the arbitrators, in pursuance to notice

given, and each filed his account against the other, and that Sisk's claim so filed, set forth all the demands he had against Garey, and the arbitrators state that this account of Sisk was the only one of which the appellee was cognizant at the time of making the award; that these two accounts were left with the arbitrators for their final award and judgment; that subsequently to this meeting, and after both parties left the arbitrators, Sisk, without any notice to the appellee, and without his knowledge and consent, submitted two other claims, one a note or single bill of his to Sisk, as sheriff, for $2000, and the other for a judgment of Mobray, use of Sisk, *vs.* Spence and Hubbard, for $108.49, and that the arbitrators without any notice from them to the appellee, that Sisk intended to file or had filed, or presented these two claims, and wholly without his knowledge and consent, and upon no other evidence than the *ex-parte* statements of Sisk, allowed the same in their award as valid claims against the appellee. These allegations and especially the allegation that the arbitrators acted in allowing those claims *without notice* to the appellee, and upon the mere *ex-parte* statement of Sisk, are not only *nowhere denied in the answer,* but on the contrary wholly and inferentially *admitted;* that they acted without notice, is expressly confessed by the arbitrators themselves in their supplemental award of the 9th of July, 1860. This action on the part of the arbitrators is clearly under the authorities cited, such miscarriage or misconduct as totally vitiates the award, and entitles the appellee to relief in equity, and the continuance of the injunction.

By the single bill the appellee promises to pay the sum of $2000 " on demand, and for the purchase money of the mill and mill-site," sold by Sisk as sheriff, " as the property of John Layton, known as the Potter Mills, *to be applied to the preference claims against said Layton,*" to " Francis A. Sisk, *sheriff.*" The bill charges, the answer admits, and the exhibits *prove,* that Sisk as *sheriff,* under

Sisk *et al. vs.* Garey.

an execution to October Term, 1854, on a judgment rendered the 3d of October, 1854, in favor of Smith and Knowles & Co., *use of Garey vs.* John Layton, for $353.54 with interest and costs, sold this mill property at sheriff's sale to the appellee, who became the purchaser thereof for $2000, and instead of paying the sheriff the money, gave him the above note, showing on its face that the money was to be applied by the sheriff to the *preference claims against Layton;* that long before this arbitration was entered into, the appellee became the owner of judgments, besides his own, on which the execution was issued against Layton, and Layton and Loockerman, to an amount far exceeding that for which this note was given to the sheriff; that these judgments were entered to the use of the appellee, and on the 27th of March, 1863, by order of Court, (Lloyd Tilghman, Special Judge,) in the case of Smith, Knowles & Co. *vs.* Layton, the sheriff (Sisk) was directed to apply the funds in his hands under the *fi. fa.* issued in that case, after deducting his legal costs and poundage fees, to the payment of these very judgments thus entered for the use of the appellee, in priority according to the respective dates of their rendition or confession, and the arbitrators themselves admit that these were the oldest judgments and preference claims against Layton. The allegations in the answer, that the appellee bought up these judgments at a large discount for the use of Layton, in order to enable him to conceal his property from his *bona fide* creditors, and that the order of the special judge was obtained by the fraud of the complainant, is not only matter in *avoidance* which cannot be regarded in this case, but is, as the appellee submits, without the pretence of proof, and so far as the allegation of fraudulent obtention of the order of the special judge, and the invalidity of his claim on these judgments is concerned, is utterly and absolutely false. The note itself, and all the allegations of the bill and admissions of the answer show, that Sisk

as sheriff, was a mere trustee of this money or note, to apply it to the preference claims against Layton, and that the appellee was the party to whom the money should have been paid, he being the owner of preference claims or judgments far exceeding the note in amount. It would be the grossest injustice to compel the appellee to pay the full amount of this note with interest to a sheriff who is charged with being, and admits himself to be, insolvent, and upon whose bond no recovery could be had if his sureties should plead limitations, and then be driven to fruitless and expensive litigation again to recover it from him.

The other parties to whom the answer claims, that this money is due as creditors of Layton, are not parties to this proceeding, nor were they parties to the submission or award ; they have their remedy against the appellee if they represent older or preferred claims. It is almost impossible, therefore, to conceive for what purposes, Courts of Equity are established, if this award as to the $2000 note, and the judgment thereon, can, under the disclosures made in this record, stand. The appellant Sisk, admits, as the bill charges, that he has never paid any part of this $2000 to any creditor of Layton. What equity, therefore, can he have in this case, to compel the appellee to pay this note to him, when the appellee is, so far as the record shows, clearly entitled to the whole of it?

Then as to the judgment of Mobray *vs.* Hubbard, for $108.49, allowed by the arbitrators. They admit, that this claim was allowed by them, without any notice to the appellee, and without any proof to show, that he was bound to pay it. The allegations of the bill, that this claim was allowed upon the mere *ex-parte* statement of Sisk, and without notice to or knowledge of the appellee, and that the arbitrators knew at the time it was allowed, that Hubbard was an insolvent petitioner ; and that the complainant would not pay it, except upon an order of the Court, are not denied directly by the answer. All the

allegations of the answer in this respect, are in avoidance, and not sustained by proof.

The allegation of the bill, that as soon as the complainant had notice of the unjust and illegal allowance of these claims, he demanded of the arbitrators an opportunity to be heard against them, and to show that they were unjust, illegal, fraudulent and oppressive ; and that the arbitrators therefore called upon Sisk, and requested his assent to re-open the award, but that he refused his assent thereto, is also not only not denied in the answer, but is proved by the arbitrators themselves.

In reference to the rule which was ordered to be laid upon the appellee to employ new counsel, he avers (and his averment in this respect is not denied in the answer,) that this rule was never served upon him in any manner by any person whatsoever, and that he had no knowledge or information of any such rule, or that the case had gone off under it, until he came to Denton, for the purpose of taking testimony to sustain his case, when, to his surprise, he was informed, the case had gone off under the rule, and a judgment had been entered against him in the suit at law, on the arbitration bond. All of these allegations are fully corroborated by the affidavits of Mr. Steele and Mr. Kemp, filed as exhibits with the bill. Under such circumstances, it is respectfully submitted, that nothing can be inferred to the prejudice of the clear case in equity of the appellee, by reason of the filing of the first bill, and its being entered off on the docket under this rule, especially as the allegation is not denied in the answer, that the rule to employ new counsel was never served on him. None of the cases cited by the appellant, reach such a case as this.

Bowie, C. J., delivered the opinion of this Court.

This appeal is taken from an order of the Court below, passed —— day of February, 1867, overruling a motion

to dissolve an injunction, previously issued from that Court, at the instance of the appellee, to stay proceedings at law on a judgment obtained by the appellants. The order appealed from was made after answer filed by the appellant Sisk, and replication entered. To arrive at correct conclusions as to the propriety of the order appealed from, it is necessary to state briefly some of the facts disclosed by the record on which it was founded.

At October Term, 1860, of the Circuit Court for Caroline County, a suit was instituted by the appellant Sisk, against the appellee in debt, for $5000, which was continued under rule *narr.* to March Term, 1861, when leave was granted to amend the writ by the *narr.*, and *narr.* bond, and award were filed. At October Term, 1861, $1800 of this claim was entered for the use of Wm. M. A. Liden, Alcaid Dawson, Wm. S. Goslin, Willis Corkran, Abraham Y. Collins, and Daniel Sparklin, and $700 for the use of J. Edward Bird & Co., and case continued under rule plea. At March Term, 1862, motion was made for judgment for want of a plea. On the 13th of the same month the appellee, by his solicitor, John M. Robinson, filed a bill on the Equity side of the same Court, alleging that the award, the subject of the action, was obtained by the mistake or misconduct of the arbitrators, and the improper practices of the appellant Sisk, and praying an injunction to stay proceedings at law. Among other allegations of the complainant it is charged that the parties to the arbitration met before the arbitrators, and presented their respective accounts against each other, which were marked exhibit B. and C. respectively, the appellant Sisk's amounting to $604.51, and the appellee's amounting to $1072.07, which embraced all the matters in dispute between them ; but the complainant further charges that subsequently to the time and meeting aforesaid, and after they had left said arbitrators, the said Francis A. Sisk, *without notice in any manner whatever to the complainant, and without his knowledge or con-*

*sent*, submitted a certain note executed by the complainant to Sisk as Sheriff of Caroline county, payable to him as such, for $2000 to be applied to the oldest judgments or liens against the real estate of John Layton, sold by Sisk as sheriff.

The copy of the note referred to as exhibit D., is as follows :

"$2000. On demand and for the purchase money of the mill and mill site and premises, sold by me as the property of John Layton, known as the Potter Mills, to be applied to the preference claims against said Layton, I promise to pay Francis A. Sisk, Sheriff, the sum of two thousand dollars. As witness my hand and seal, this 27th day of May, 1856.

Thos. F. Garey, [Seal.]"

Exhibit E. consists of short copies of judgments in the Circuit Court for Caroline County, of several plaintiffs for the use of Thomas F. Garey, from March to October Term, 1854, the uses being entered at various times between 1854 and 1858. The award was dated on the 30th June, 1860, for $2318.90 to be paid by Garey to Sisk, including the principal and interest on the above note as a part of the debt, and the sum of $108.49, amount of judgment of Mobray, use of Sisk, against Spence and Hubbard.

On the 9th July, 1860, the arbitrators certify that there is nothing to show that Garey is bound to pay the execution of Henry Mowbray *vs.* Spence and Hubbard, with which he was charged in making up the balance of the award ; "that Garey claims to have off-sets against his note for $2000, for the purchase money of Potter's or Layton's Mills, and Sisk refuses to re-open the award already made ; and they further certify that as far as they are informed, Garey had no notice that the note would be presented in arbitration of their disputes concerning fees." That the off-sets claimed by Garey are the oldest

judgments against Layton held by and transferred to said Garey.

These arbitrators, it appears, were attorneys at law, who subsequently appeared for their respective clients in the action upon the award, having full notice of its character.

The complainant Garey claims to be the owner of the judgments referred to, and therefore entitled to be credited with their amount on the note. Admitting the terms of submission were broad enough to include this note within the matters to be arbitrated, a point which it is unnecessary now to decide, the allegations of the bill impute to the appellant Sisk, and the arbitrators, such misconduct, as if established, is sufficient of itself to set aside the award.

In support of these allegations, the complainant exhibits with his bill, exhibits B., C., and D. The first of these purporting to be "Statement of Cases *vs.* Thomas F. Garey," is followed with this certificate of the arbitrators:

" We hereby certify, that the within is the only account filed by Francis A. Sisk in the presence of Thomas F. Garey, and the only one of which he was cognizant at the time of the making the award between them."

Geo. M. Russum, [Seal.]<br>J. Hopkins Tarr, [Seal.]

It appears from the docket entries in the case of Garey *vs.* Sisk and others, that the defendants in the original cause were all summoned and their answers filed, but that of the appellant Sisk only appears. In that, he does not specifically deny the allegation of the bill, that he filed without notice to the opposite party, claims which were not included in his first statement, nor does he deny the facts certified to by the arbitrators, but he emphatically denies there was any intent or purpose on his part, or that he did before the arbitrators; or at any other time

contrive to defraud or practice any fraud upon the complainant.

Fraud is sometimes a legal inference from the conduct of the parties, without regard to their intent. The principal fact, from which this deduction might be made, is not denied by the appellant in his answer to the original bill.

On the 6th December, 1866, the appellee filed a second bill of complaint, recapitulating the allegations contained in the first, and referring to its dismissal as follows:

"That not until after the November election of 1864, when John M. Robinson, Esq., his only solicitor, in the aforesaid injunction, restraining and prohibiting the prosecution of the aforesaid suit at law, against your orator, was elected Judge of the Circuit Court for Queen Anne and Kent Counties—the tenth Judicial Circuit of the State—and thus by the Constitution and laws of the State, disqualified from acting as your orator's solicitor, or from practising law in the State, was any action taken toward prosecuting said suit."

The appellant Sisk in his answer to the second bill denies this allegation, and exhibits the docket entries as follows:

| Thomas F. Garey | |
|---|---|
| *vs.* | |
| Francis A. Sisk, J. Edward Bird, Joseph A. Bird, Alcaid Dawson, William M. A. Liden, William S. Goslin, Willis Corkran, Abraham Y. Collins, Daniel Sparklin. | Circuit Court for Caroline County. March Term, 1865. |

1862, March 13. Bill of Complaint and exhibits filed; bond filed and approved; writ of injunction and subpa. issued as prayed; injunction returned, "all sumd."

except J. E. & J. A. Bird ; and subpa. to Caroline retd., " sumd. all."

1863, Jany. 19.   Rule, answer.

" March 28.   Issue, attachments to answer counter-manded as to Bird and Goslin ; attachment issued.

" March 30th.   Answer of J. E. & J. A. Bird filed.

" July 20th.   Rule on shff. to return attachment.

Attachment returned, " all attached."

" Octo. 9.   Answer of Wm. M. A. Liden, Alcaid Daw-son, William S. Goslin, Willis Corkran, A. Y. Collins and Daniel Sparklin filed ; answer of F. A. Sisk filed.

1864, July 18th.   Issue commn. to Jas. B. Steele, Esq., to take testimony ; commn. issued 8 July, 1864.

" Octo. 8.   Note from J. F. Garey to F. A. Sisk, shff. filed ; replication filed.

1865, Jany. 16th.   Rule on complainant to employ new counsel.

" March 29.   Rule on commr. to return commn. by July term ; Rule issd. and retd. " served."

" July 11.   Com'n and Commrs. return filed.

" Sept. 4th.   Off under the rule.

True copy, Test :—Josiah Jump, Clk.

The inquiry in all cases of this kind is, first, whether the party seeking the interposition of a Court of Equity, had an adequate defence at law, and secondly, whether he was deprived of the opportunity of making such defence, by fraud, surprise, or inevitable accident or mistake, without any default of his own.  *Essex vs. Berry,* 2 *Vert.,* 161 ; *Warner vs. Conant,* 24 *Vert.,* 351 ; 2 *Story's Eq.,* sec. 887 ; 7 *Gill,* 189 ; 8 *Gill,* 433 ; 2 *Md.,* 320; 1 *Md. Ch.,* Dec. 182.   If we apply these principles to the case as presented by the first or second bill and the answers thereto, it appears there was sufficient ground for issuing and continuing the injunction as prayed.

In the absence of statutes which vary or control the

general jurisdiction of equity in matters of award, Courts of Equity will grant relief, in cases where the defendant had not adequate defence at law. "It is well known," says Story, "that when a suit is brought at the common law, upon an award, no extrinsic circumstances or matter of fact *dehors* the award, can be pleaded, or given in evidence, to defeat it. Thus for example, fraud, partiality, misconduct or mistake of the arbitrators, is not admissible to defeat it. But Courts of Equity will in all such cases, grant relief, and upon due proofs, will set aside the award." Where, after the hearing was closed, the arbitrators received a statement from one of the parties, containing new and different items of claim from any presented at the hearing and without the knowledge of the other party, a Court of Equity will enjoin a suit at law upon, and set aside the award. 2 *Story Eq.*, 1452–3, and authorities there cited.

The answer of the appellant to the second bill of complaint, like that to the first, does not deny the specific charge before referred to, but leaves it unanswered, except by general denials of fraud or intention to practice fraud. With regard to the manner in which the first bill was stricken off, at July Term, 1865, he avers, it was by reason of the neglect and refusal of complainant to employ new counsel, pursuant to a rule laid on him and of which he had due and legal notice, and that judgment in favor of the appellant was taken at October, 1865, as by reference to the docket entries in said cases, marked exhibits No. 2 and 3, will appear. Exhibit No. 2 shows the rule to employ new counsel was laid 16th January, 1865, and the case was entered, "Off under the rule September 4th," but it does not show, that the rule was ever issued and served on the complainant. On the other hand, in the same case, when a rule was laid on the commissioners to return the commission, the entries show, "Rule issued and returned served." The absence of these latter

entries with regard to the first rule, indicates the rule was never issued or served. The answer of the respondent, referring to the docket entries as exhibits, must be qualified by those exhibits. It does not therefore positively deny the allegation of the complainant, that he had no knowledge or information whatever of such a rule or proceeding, until he came to the town of Denton, for the purpose of taking testimony in the case.

With such averments remaining unanswered or not positively denied, we think the injunction originally issued should be continued until the final hearing, and the order appealed from should be affirmed.

*Order affirmed*
*with costs to the appellee.*

(Decided 13th July, 1867.)