HUGH GELSTON AND WOLF M. MEYENBERG *vs.* ALBERT SIGMUND.

*Specific Performance—Injunction—Agreement—Practice.*

Where the object of the bill in equity is to obtain the specific performance of a contract, and the writ of injunction is asked for as ancillary thereto, the writ cannot be maintained unless the case presented by the bill would authorize a Court of Equity to enforce the contract.

Every agreement to merit the interposition of a Court of Equity to enforce it, must be fair, just, reasonable, *bona fide*, certain in all its parts, mutual, &c., and if any of these ingredients be wanting, Courts of Equity will not decree a specific performance.

An agreement by A. to let B. retain possession of certain property from the 1st of July, 1866, to the 1st of July, 1867, upon his giving the same rent that A. "might be able to obtain from other parties," is not such an agreement as a Court of Equity will enforce. It lacks certainty and mutuality.

In a summary proceeding by a landlord to eject his tenant, the latter is entitled to avail himself by way of defence, before the justice of the peace, and in the Court of Common Pleas on appeal, of whatever equitable right or claim he may possess under a contract for the renewal

Gelston and Meyenberg *vs.* Sigmund.

or extension of his lease; and if the matter be decided against him in that tribunal, he is not entitled to resort to a Court of Equity for relief.

APPEAL from the Circuit Court of Baltimore City.

*Thales A. Linthicum* and *P. M'Laughlin,* for the appellants.

The object of the original and amended bill filed in the Court below, was to obtain the specific performance of a contract, and an injunction as auxiliary thereto. The contract sought to be enforced was, that the appellant Gelston, during the year 1865, agreed to let the appellee retain possession of certain premises in the city of Baltimore, fronting on Charles and Baltimore streets, from the 1st of July, 1866, to the 1st July, 1867, upon his giving said Gelston the same rent he might be able to obtain from other parties, and that he would give him a memorandum in writing to that effect during the term of the running lease, at the usual time of renewal, in or about the month of April, 1866.

And this being the case made by the bills, no other contract than that set forth can be enforced. *Chesapeake & Ohio Canal Co. vs. Young,* 3 *Md. Rep.,* 490; *Mundorf and wife vs. Kilbourn and Howard,* 4 *Md. Rep.,* 459; *Stoddert et. al. vs. Bowie's Exc'r, et. al.,* 5 *Md. Rep.,* 18; *Smith vs. Crandall,* 20 *Md. Rep.,* 500; and also the case of *Carr & wife et. al. vs. Hobbs, Adm'r of Bell,* 11 *Md. Rep.,* 285, where the Court recognized the same principle as to bills, to enforce the vendor's lien.

The injunction being merely ancillary to the relief prayed by the bill, if it appear that final relief cannot be granted upon the case made by the bill, the injunction should not be granted. *Geiger vs. Green,* 4 *Gill,* 472; *Allen vs. Burke,* 2 *Md. Ch. Dec.,* 534.

And the injunction will not be maintained or continued, unless the case presented by the bill would authorize the Court to enforce the contract.

Gelston and Meyenberg *vs.* Sigmund.

The specific execution of a contract is not a matter of right in the party applying for it, and to be demanded *ex debito justitiæ*, but it rests in the sound and reasonable discretion of the Court, to grant or refuse it according to the circumstances of each case. *Duvall vs. Myers,* 2 *Md. Ch. Dec.,* 401 ; *Seymour vs. Delancey,* 6 *Johns. Ch. Rep.,* 222. And the Court may withhold relief where, under the circumstances, the decree would be inequitable, *Waters vs. Howard et. al.,* 8 *Gill,* 283 ; or where the decree would produce injustice or litigation ; 2 *Story's Equity,* secs. 750, 769.

The contract to be enforced must be fair, just, reasonable, equal in all its parts, certain, mutual and founded on an adequate consideration, and in cases falling within the Statute of Frauds, must be in writing. And if any one of these ingredients be wanting, Courts of Equity will not decree a specific performance. And it is enough to doubt on any of these points to refuse relief. *Geiger vs. Green,* 4 *Gill,* 472 ; *Mundorff &c. vs. Kilbourn & Howard,* 4 *Md. Rep.,* 459 ; *Stoddert et. al. vs. Bowie's Ex'r et. al.,* 5 *Md. Rep.,* 35 ; *Smith vs. Crandall,* 20 *Md. Rep.,* 482 ; *Duvall vs. Myers,* 2 *Md. Ch. Dec.,* 401.

Applying these rules to the contract stated in the bills, it will be found :

1st. That the alleged contract is without consideration to support it, and is a mere naked proposition and never accepted by the appellee. *Geiger vs. Green,* 4 *Gill,* 472.

2d. The alleged contract is not set out with sufficient certainty to enable the Court to decree its execution ; or in other words, the bill does not state a contract certain and definite as to its terms or duration, in that it does not show certainly when the renting is to end. *Allen vs. Burke,* 2 *Md. Ch. Dec.,* 534. It being stated to continue from time to time as long as the appellee will pay as much rent as any one else. The terms of the contract as stated are void for want of certainty, the rent to be paid is as

much as Gelston might be able to obtain from other parties. *Bromley vs. Jefferies*, 2 *Vernon*, 415 ; *Smith vs. Crandall*, 20 *Md. Rep.*, 500 ; *Whitelock vs. Duffield*, 1 *Hoffman*, (*N. Y.*,) 110 ; *Abeel vs. Radcliff*, 13 *Johns.*, 297.

3d. It wants the essential ingredient of mutuality. It imposes no obligation and is not compulsory, and contains no mutual or reciprocal engagements. It gives the appellee a mere privilege to be exercised or not at his own pleasure, and he might refuse to continue his renting or pay the rent offered by others, and Gelston has no power or right to enforce or compel him to remain as tenant on any terms. *Bromley vs. Jefferies*, 2 *Vernon*, 415 ; *Duvall vs. Myers*, 2 *Md. Ch. Dec.*, 401 ; *Allen vs. Burke*, 2 *Md. Ch. Dec.*, 534 ; *Smith vs. Crandall*, 20 *Md. Rep.*, 500.

And a party not bound by the agreement itself has no right to an enforcement by expressing his willingness to perform his part of the agreement. His rights depend not upon his subsequent offer, but upon his original obligation. *Duvall vs. Myers*, 2 *Md. Ch. Dec.*, 401.

And the claimant does not even state his willingness to pay as much as Meyenburg.

4th. It is such a contract as is required by the Statute of Frauds to be in writing. The bill states the alleged agreement to have been made in the year 1865, (in or about April,) after the signing of the memorandum for the renewal of the lease. This statement then shows a contract not to be performed within one year from the making thereof. It is a contract which could not have begun until after fifteen months from the making of it. Confining the attention then to the case made by the bills, and examining the averments as therein stated, it is apparent that upon the case made, the injunctions should not have been granted. No ground is stated for equity to interfere by injunction. The bills do not allege irreparable damage, or show how the appellee will be injured beyond the power of a Court of law to redress. A mere

Gelston and Meyenberg *vs.* Sigmund.

statement that the injury complained of or apprehended, is or will be irreparable, is not sufficient. Appealing to the conscience of the Court, the party should by averment, set forth the facts which show the apprehension of injury to be well founded. *White vs. Flannigan,* 1 *Md. Rep.,* 539 ; *Roman vs. Strauss,* 10 *Md. Rep.,* 96 ; *C. & O. Canal Co. vs. Young,* 3 *Md. Rep.,* 480.

And chancery will not interfere where the party's own neglect or default has made an application to equity necessary. *Little vs. Price,* 1 *Md. Ch. Dec.,* 182 ; *Dilly and Heckrote vs. Barnard,* 8 *G. & J.,* 170 ; *Gott and Wilson vs. Carr,* 6 *G. & J.,* 312.

The bills show that the appellee's term of renting expired with the first day of July, 1866, that his interest in the premises had determined, that he had been regularly notified to quit the occupation of the same, and his refusal and neglect to do so at the end of the term. That he was made aware shortly after receiving notice to quit, of the agreement between Gelston and Meyenberg, and of the full extent of Meyenberg's interest thereunder. That the Court of Common Pleas had already passed upon and adjudged the contract set forth in the bill, was not a valid legal contract. Upon this state of facts, as presented by the bills, it will be insisted that the injunction ought not to have been granted, and it having been so improvidently granted, that the orders granting the same ought to be overruled or reversed, and the bill dismissed.

1st. Because the complainant's claim is without merit, he having no right, title or interest in or to the premises mentioned.

2d. Because he had full notice and ample opportunity to make his defence at law, and to present the same facts stated in his bills as the ground of his defence.

3d. That the facts stated in the bills were in fact presented as a defence by the complainant in the action at law in the Court of Common Pleas, and passed upon by the said Court.

4th. That the Court of Common Pleas being a Court of competent jurisdiction, and having the right to determine such cases on appeal, according to the law and the *equity*, and the right of the matter, and the facts stated in the bill having been presented for its consideration and judgment, the judgment of that Court thereon is conclusive and final. *Lyday vs. Douple et al.*, 17 *Md. Rep.*, 188; *Gott and Wilson vs. Carr*, 6 *Gill & Johns.*, 312; *Briesch vs. McCauley*, 7 *Gill*, 189; *Chappell et al. vs Cox*, 18 *Md. Rep.*, 513.

And a Court of Equity cannot interfere by injunction, and is without jurisdiction to review the decision of said Court, as to do so would in effect be to entertain an appeal from the verdict and judgment of that Court. *Contee vs. Cooke* 2 *H. & J.*, 179.

5th. The application for an injunction to restrain the argument of the motion for a new trial, besides being in violation of the Bill of Rights and the Constitution of this State, shows that it was the purpose and intention of the complainant to hinder and delay the appellant Gelston in obtaining a prompt decision upon his rights, and is an evasion of the provisions of the law of this State relating to landlord and tenant.

6th. That the injunction in this case should not have been granted without notice to the appellants, and until they had had an opportunity of being heard. *Jones vs. McGill*, 1 *Bland*, 180; *Todd vs. Pratt*, 1 *Harr. & Johns.*, 465.

The provisions of the law relating to landlord and tenant give a summary mode for the recovery of the possession of lands holden by tenants after the expiration of their terms therein; and the expedition with which these enactments are required to be executed is inconsistent with the power of a Court of Equity to arrest them by injunction, summarily granted on the application of the tenant. The recognition of such a power would for the

most part defeat the very object contemplated by the Legislature. *Crockett vs. Parke,* 7 *Gill,* 237 ; *Alexander and Wilson vs. The Mayor and C. C. of Baltimore,* 5 *Gill,* 383 ; *Glenn and Kennedy vs. Fowler,* 8 *G. & J.,* 340 ; *Richardson et al. vs. Mayor and C. C. of Baltimore,* 18 *Gill,* 433.

Especially is this argument to be regarded when the tenant has had his rights determined in the appropriate tribunals designated by the law, having the same powers and jurisdiction claimed by the Court of Equity.

*John Stewart,* for the appellee.

As this case is before the Court only on the bills, it will be contended that the bills disclose a clear case for the interposition of a Court of Equity. The appellee, through a long series of years, had renewed from year to year a lease of premises, in which he had built up a large and flourishing business; the appellant Gelston, after solemnly promising to renew the lease, to expire July 1st, 1866, in fraud of it, gives notice to the appellee on the ⸺ of February, 1866, to leave the premises ; and standing upon the legal technicality that an agreement to renew a lease is not legally or at law a renewal of the same, seeks to obtain and transfer to a rival manufacturer the good will and custom which his tenant, by long years of industry, had erected and made. It was not discovered till towards the close of the case in the Court of Common Pleas, on appeal, that Gelston had transferred his reversion after July 1st, 1866, to the appellant Meyenberg, and that the latter claimed possession of the property, so that the appellee was thus deprived of the use of the provision in Article 53, section 5, of the Code of Public General Laws, and is entitled, under all the circumstances, to the aid of a Court of Equity. *Mousley vs. Wilson,* 1 *Md. Ch. Dec.,* 390 ; *Haight & O'Connell vs. Burr,* 19 *Md. Rep.,* 130.

BARTOL, J., delivered the opinion of this Court.

This being an appeal from orders of the Circuit Court granting injunctions, it must be determined upon the allegations of the bill.

These are substantially that the appellee, on the 28th day of April, 1864, rented from Hugh Gelston, one of the appellants, two pieces of property in the city of Baltimore, fronting on Baltimore and Charles streets, for the term of one year from the 1st day of July, 1864, at the rate of $135 per month, by an agreement which is alleged to be in writing under seal, but is not produced or exhibited with the bill.

That the lease was renewed by a written memorandum, not under seal, on the 11th day of April, 1865, for a further term of one year from the 1st day of July, 1865, for the same rent. This memorandum is not exhibited with the bill.

That he has been in possession of the property for ten years at least, under leases from Gelston, and with the understanding that Gelston would from time to time renew the current lease to the complainant, *upon his giving him the same rent he might be able to obtain from other parties. That Gelston did, during the year 1865, and after the signing of the memorandum of lease above referred to, agree to let him retain the possession of the property from the 1st day of July, 1866, to the 1st day of July, 1867, upon the same terms as those already set forth, and that he would give him a memorandum to that effect, during the term of the running lease; that is to say, at the usual time of renewal, on or about the month of April,* 1866.

The bill further charges that Gelston refused to put in writing a memorandum of this last agreement, upon the ground that he had executed a lease to Wolf M. Meyenberg of the same premises, to commence on the 1st day of July, 1866.

That the agreement between Gelston and the com-

plainant was known to Meyenberg at the time he procured the lease from Gelston.

The bill charges that after giving notice to the complainant to quit, Gelston, at the instigation of Meyenberg, resorted to a summary proceeding at law to eject the complainant from the premises at the expiration of his term, under the written memorandum of lease. That the cause recently came on for hearing before the Court of Common Pleas of Baltimore city, which Court " decided that there was merely an agreement to lease, and that such agreement was not binding in law, and the judgment of the Court was therefore against the complainant." That he has filed a motion for a new trial in that Court.

The bill prays for a specific performance by Gelston of his said contract, that he may be restrained from enforcing his judgment, and that Meyenberg may be restrained from going into possession of the premises, and may discover and produce his paper title, and for general relief.

Upon this bill the injunction was ordered as prayed on the 26th day of September, 1866; bond was filed and approved, and the writ of injunction issued on the same day.

Afterwards an amended bill was filed by the complainant on the 5th day of October, 1866, charging that Gelston and Meyenberg by their attorneys are now pressing for an argument of the motion for a new trial in the Court of Common Pleas, and have obtained an order of that Court fixing that motion for hearing on Saturday next, the 6th of October; and praying for 'an injunction to restrain Gelston and Meyenberg from proceeding with the cause in the Court of Common Pleas, on appeal, or attempting to argue, or have disposed of, the motion for a new trial.

On this amended bill an order was passed, on the 5th day of October, granting the injunction as therein prayed.

From these orders the respondents, after filing their answers to the bill and amended bill, have taken this

appeal, which presents for our consideration the question whether there was sufficient ground for granting relief by injunction.

It is well established, that where the object of a bill in equity is to obtain the specific performance of a contract, and the writ of injunction is asked for as ancillary thereto, the writ cannot be maintained unless the case presented by the bill would authorize a Court of Equity to enforce the contract. *Geiger & Patterson vs. Green,* 4 *Gill,* 472; *Allen vs. Burke,* 2 *Md. Ch. Dec.,* 534.

Here the whole case of the complainant rests upon the alleged contract of Gelston to execute a lease of the premises for the year beginning on the first day of July, 1868.

The contract as alleged in the bill was that Gelston, during the year 1865, " agreed to let him retain the possession of the property from July 1st, 1866, to July 1st, 1867, upon his giving Gelston the same rent he might be able to obtain from other parties."

It has been repeatedly ruled by this Court that " every agreement to merit the interposition of a Court of Equity to enforce it, must be fair, just, reasonable, *bona fide, certain in all its parts, mutual,* &c., and if any of these ingredients be wanting, Courts of Equity will not decree a specific performance." 6 *G. & J.,* 439 ; 4 *Md. Rep.,* 459 ; 5 *Md. Rep.,* 35 ; 20 *Md. Rep.,* 500.

Now the alleged contract as it is stated in the bill seems to us to be wanting in two essential qualities, viz : *certainty* and *mutuality.*

The rate of rent to be paid is not certain or definite. It was " *as much as any one else would pay.*" That could not be certainly ascertained ; it was not practicable to know how much another would give. In *Bromley vs. Jefferies,* 2 *Vernon,* 415, it was held that such a stipulation in an agreement rendered it void for uncertainty. See also *Abeel vs. Radcliff,* 13 *Johns.,* 297.

There was no obligation upon the appellee to continue

in possession of the premises, or to pay any particular rent; the contract as stated did not bind him to continue as tenant of Gelston, but left him with the option to accept or refuse the lease; it was therefore wanting in mutuality, and cannot be enforced at the option of the party who was not himself bound. In 1 *Sch. & Lef.*, 18, Lord Redesdale said, "this would not be equity, that a party not bound by the agreement itself, should be permitted at his option, and when he finds it to his advantage to do so, to compel the other party to perform, when if the advantage was the other way, he could not himself be coerced to perform-ance on his part." See also *Duvall vs. Myers,* 2 *Md. Ch. Dec.*, 401.

It follows from what has been said that in our opinion the appellee was not entitled to the relief prayed, and that the Circuit Court erred in granting the injunctions upon the bill and amended bill.

We deem it proper to add further that in the opinion of this Court, the appellee was entitled to avail himself of whatever equitable right or claim he might possess under a contract for the renewal or extension of his lease, in defence of the summary proceedings instituted against him by his landlord before the Justice of the Peace and in the Court of Common Pleas on appeal, and if deter-mined against him in that tribunal he is not entitled to resort to a Court of Equity for relief. 8 *G. & J.,* 340 ; 5 *Gill,* 383 ; 8 *Gill,* 433 ; 17 *Md.,* 188.

A decree will be signed reversing the orders of the Cir-cuit Court appealed from with costs to the appellants and dismissing the bill.

*Orders reversed*
*and bill dismissed.*

(Decided 28th June, 1867.)