FREDERICK WILLIAM SCHWANEBECK, and PAUL F. W. SCHWANEBECK *vs.* LOUIS C. SMITH, and others.

*Specific performance—Uncertainty of Contract—Opinions of Witnesses as to Values.*

Certain parties, complainants and defendants, having some interest in the soil, by previous lease or conveyances, in the bed of B. street, between C. and P. streets, and there being an ordinance pending, or about to be introduced in the City Council for the condemnation and closure of B. street between C. and P. streets, entered into an agreement, the parties of the second part being the complainants, and the parties of the first part thereto being the defendants. By this agreement it was mutually agreed between said parties that in the event of the passage of said ordinance, they would divide the ground forming the bed of B. street as follows: "The parties of the second part shall be

Schwanebeck *vs.* Smith, *et al.*

awarded the ground beginning at the south west corner of the lot now owned by them at the north east corner of C. and said B. streets, running thence southerly into the bed of said B. street a distance of twenty-five feet, thence easterly, a distance of ninety-five feet, to a ten foot alley, with the use in common; thence northerly to the southeasterly boundary of the lot now owned by them, thence westerly ninety-five feet to the place of beginning.  The parties of the first part hereto shall be awarded the ground of said proposed street which shall remain after the award to the parties of the second part, as above set forth. The parties of the second part further agree to sell to the parties of the first part, after said division shall be made, a piece or parcel of said ground which shall be furtherest south in the proposed division, which piece or parcel shall front seven feet on C. street to a ten foot alley, charging therefor the market price for said ground as it shall appear on the date of said sale.   The parties of the first part agree to purchase, on the above terms, the piece or parcel of ground above described."   The ordinance above referred to was passed, and the city authorities proceeded to condemn and close B. street between said points, and the defendants were assessed for benefits $432.14.   On a bill filed by the parties of the second part against the parties of the first part for the specific performance of said contract, and for the payment by the defendants of the amount of said assessment, it was HELD:

1st.  That there was such uncertainty and vagueness in the terms of the contract as to render it improper for the Court to undertake to decree its specific performance.

2nd.  That as to that part of the contract by which the plaintiffs stipulated that they would sell to the defendants a portion of ground "charging therefor the market price for said ground as it shall appear on the date of said sale," the price to be paid was, in part, of the substance of the consideration for the contract; and in the absence of any provision therefor in the contract the Court had no means by which to ascertain, with any proper degree of certainty, the market price of this piece of ground at the date of its sale.

3rd.  That the opinions or judgments of witnesses as to values, was too proverbially variant and conflicting to be appealed to for this purpose.


APPEAL from the Circuit Court, No. 2, of Baltimore City.

Schwanebeck *vs.* Smith, *et al.*

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, and McSHERRY, J.

*Emil Budnitz,* and *C. Dodd McFarland,* for the appellants.

*James McColgan,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

This is an application for specific performance of what is alleged to be a contract between the parties, plaintiffs and defendants in this case, for the partition or division of certain portions of the bed of Birckhead street, condemned and closed by the authority of the City of Baltimore, between Charles and Patapsco streets. It appears that each of the parties, complainants and defendants, had some interest in the soil, by previous lease or conveyances, in the bed of Birckhead street, between Charles and Patapsco streets; and there was an ordinance pending, or about to be introduced, in the City Council, for the condemnation and closure of Birckhead street, between Charles and Patapsco streets; and in this state of affairs, the parties to this case entered into an agreement,—the parties of the second part to the agreement being the complainants in this case, and the parties of the first part thereto being the defendants. The agreement is as follows: "That the parties hereto do mutually agree and covenant to do no act that shall hinder the passage by the Mayor and City Council of Baltimore of an ordinance providing for the reversion of the city's interest in certain portions of ground binding upon lots of ground held by the parties hereto, and which portions of ground were dedicated to the city for the use of a street to be known as Birckhead street, and which said

dedication was not accepted by the city.  And they do further agree that, in the event of the passage of said ordinance, they will divide the ground forming the bed of said street, in the manner following, that is to say: The parties of the second part shall be *awarded* the ground beginning at the southwest corner of the lot now owned by them at the N. E. cor. of Charles and said Birckhead streets, running thence southerly into the bed of said Birckhead street, a distance of twenty-five feet, thence easterly a distance of ninety-five feet to a ten foot alley, with the use in common, thence northerly to the southeasterly boundary of the lot now owned by them, thence westerly ninety-five feet to the place of beginning.  The parties of the first part hereto, (that is to say, the defendants,) shall be *awarded* the ground of said proposed street, which shall remain after the award to the parties of the second part, as above set forth.  The parties of the second part (the plaintiffs) further agree to *sell* to the parties of the first part, *after said division shall be made*, a piece or parcel of said ground, which shall be furtherest south in the proposed division; which said piece or parcel shall front seven feet on Charles street to a ten foot alley, charging therefor *the market price for said ground, as it shall appear on the date of said sale.*  The parties of the first part agree to purchase, on the above terms, the piece or parcel of ground above described.''

It is quite apparent that this agreement was unskilfully drawn, and it is open to doubtful construction in regard to several questions.  It is alleged in the bill and admitted by the answer, that the ordinance referred to, for condemning and closing Birckhead street from the east side of Charles street to the west side of Patapsco street, was passed in October, 1888, and that the city authorities proceeded to condemn and close the street between said points, and that the defendants were

Schwanebeck *vs.* Smith, *et al.*

assessed, as for benefits, the sum of $432.14, which amount constitutes a lien on the ground of the defendants embraced within the bed of Birckhead street, fronting on Charles street; but which assessment the defendants have refused to pay, and the city officials threaten to sell the ground of the defendants so embraced in the bed of Birckhead street, for payment of the assessment. The plaintiffs allege that the defendants have refused to execute to them a deed for the lot to which they are entitled under the agreement, although they, the plaintiffs, are ready and willing to sell and convey the lot, seven by ninety-five feet, to the defendants, *at the market price as provided in the agreement.*

The bill prays, 1st, that the defendants may be decreed to pay the $432.14, the assessment against them as for benefits for closing the street, and all costs on the assessment, and thus relieve the ground of the lien or encumbrance; 2nd, that the defendants be decreed to grant and convey to the plaintiffs, by a good and sufficient deed, the lot of ground forming a part of the bed of Birckhead street, condemned and closed as aforesaid, having a front of twenty-five feet on Charles street, with a depth of ninety-five feet, being the lot agreed to be awarded to the plaintiffs by the agreement exhibited with the bill, and for general relief.

The defendants, by their answer, deny *in toto* the rights claimed by the plaintiffs. They deny the correctness of the construction of the agreement, as contended for by the plaintiffs; and they insist that *they are under no obligation whatever to the plaintiffs* to pay off the assessment made upon them by the city for benefits for closing the street; nor are they bound, as they contend, to make a deed to the plaintiffs for any part of the bed of the street. And they further insist that the contract is greatly wanting in certainty and mutuality, and that it is not such as a Court of equity should specifically enforce.

Schwanebeck *vs.* Smith, *et al.*

The City of Baltimore, by its answer, insists upon its right to enforce the assessment, and to the benefit of the lien upon the ground.

The contract provides for a division of the bed of the street between the parties, upon its being condemned and closed by the city; and it refers to the parts to be awarded to each; but how or by whom the award is to be made, or by what instrument effected, the contract is entirely silent. Whether this award was intended, or was supposed to be necessary, to be made by the City Commissioner in condemning and closing the street, or that it was necessary to have the sanction of the city authority to any division that might be agreed upon by the parties, would seem to be matter of doubt. The parties have not stipulated for mutual conveyances for the parts to be awarded. They have simply said that certain parts of the bed of the street shall be awarded, but without fixing any valuation, or specifying any instrument of title whatever. But it is stipulated by the plaintiffs that they will sell to the defendants, *after said division shall be made*, a certain piece or parcel of said ground fronting seven feet on Charles street to a ten foot alley, (without saying whether the alley is the boundary of the width or the depth of the lot,) "charging therefor the market price for said ground *as it shall appear on the date of said sale;*" and the defendants agreed to purchase the same on those terms. This is, in part, of the substance of the consideration for the contract. But how is this price to be ascertained? It was not designed that this particular piece or parcel of ground should be put up at public sale, in order to ascertain the market price; and the opinions or judgments of witnesses, as to values, are too proverbially variant and conflicting to be appealed to for the purpose of *fixing with certainty* the market value of the property at a particular date. The Court has no means, by which

to ascertain with any proper degree of certainty, the market price of this piece of ground at the date of its sale. There would therefore seem to be such uncertainty and vagueness in the terms of the contract as to render it improper for the Court to undertake to decree its specific performance. It is a settled principle in this Court, that "every agreement to merit the interposition of a Court of equity to enforce it, must be fair, just, reasonable, *bona fide, certain in all its parts,* mutual, &c., and if any of these ingredients be wanting, Courts of equity will not decree a specific performance." *Gelston vs. Sigmund,* 27 *Md.,* 334, 343, and the cases there cited. In the case just cited, the agreement was to let B. retain possession of certain property from the 1st of July, 1866, to the 1st of July, 1867, upon his giving the same rent that A. "might be able to obtain from other parties;" and it was held, that the agreement was uncertain, and was not such as a Court of equity would enforce: That it could not be certainly ascertained how much any other person would pay, and it was therefore too uncertain to be specifically enforced. In that case the case of *Bromley vs. Jefferies,* 2 *Vern.,* 415, was cited and relied on by the Court, in which there was a covenant by A. that B. should have a certain estate for £1,500 less than any other purchaser would give for it, and afterwards the covenantor devised this estate to his grandson for life, with remainder over, and died. The Court refused to decree specific performance of the agreement, by reason of the uncertainty of it, because, as said by the Court, "if the estate was not to be sold, but the plaintiff was to have it, it was not practicable to know what a purchaser would give for it." And so here, the market price of property being what it will bring in fair open market at public sale, it is not practicable to ascertain that price unless the property be subjected to the test of such sale; and that is clearly not what was contemplated

by the parties. And to determine the matter upon the mere opinions of witnesses that might be produced by the opposing parties, would not conform to the terms of the contract, and might work surprise to either or both of the parties. Indeed, to determine the question on such evidence would simply be to make it depend upon the opinions of valuers, with respect to whose opinions the parties might not have been willing to contract; for, as said by Lord ALVANLEY, M. R., in the case of *Emery vs. Wase*, 5 *Ves.*, 848, "Valuers differ so much, that it is not very wise to agree to sell according to the valuation of any one."

The agreement not being of a nature to be specifically enforced by a Court of equity, the decree below dismissing the bill will be affirmed, with costs, and the plaintiffs be left to any legal remedy they may have on the contract, for breach thereof. *Emery vs. Wase*, 5 *Ves.*, 846, 848; *Colson vs. Thompson*, 2 *Wheat.*, 336.

*Decree affirmed, with*
*costs to appellees.*

(Decided 15th March, 1893.)