(Decided December 20th, 1898.)

---

## ALBERT N. HORNER *vs.* JOHN W. WOODLAND.

*Specific Performance—Indefinite Agreement.*

Specific performance will not be decreed of a written contract for the sale of land which is indefinite and obscure in its terms, and when the real intention of the parties cannot be clearly ascertained.

The plaintiff wrote to defendant offering to take $4,500 for the H. lot " with the $8,500 thereon, if you will allow G. one year in which to pay you $1,500, and deed the farm to him or his order when the $1,500 is paid you, provided also G. will receipt to me for any interest he may have in the said lot." Defendant accepted this offer, but there was nothing in the memorandum to show what farm was intended or what relation the payment of the $1,500 bore to the payment of the $4,500. The evidence taken was in direct conflict as to whether the plaintiff was to pay the difference between the two amounts or not. *Held,* that specific performance should be refused.

Appeal from a decree of the Circuit Court No. 2 of Baltimore City (SHARP, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*R. B. Tippett* and *W. Sherman Bansemer*, for the appellant.

*Beverly W. Mister*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant as plaintiff filed a bill in the Court below for a specific performance by the appellee of a contract for the purchase or exchange of certain lands, and from the decree dismissing his bill he took this appeal.

The written memorandum of the contract in question is composed of two parts, an offer to sell made by the appellant and an acceptance of the offer by the appellee. The offer and acceptance are as follows:

" J. W. Woodland—I will take $4,500 for the Hammett lot with the $8,500 thereon if you will allow Mr. Grafflin one year in which to pay you $1,500 and deed the farm to him or his order when the $1,500 is paid you: provided also Mr. Grafflin will receipt to me for any interest he may have in the said lot known as the Old Hammett—Three Mile House Property.

3-4-95.        (Signed)   ALBERT N. HORNER."

" I will accept the above contract for the ten acre lot known as the Hammett House and deeded to A. N. Horner by Joseph Halstead, provided the said Albert N. Horner can give a good merchantable title for the same.   Expenses on both properties adjusted to day of transfer.

March 5th, '95.     (Signed)   J. W. WOODLAND."

The principles regulating the exercise by Courts of Equity of their power to compel the specific performance of contracts are well settled.   Specific performance is not a matter of right in the litigant but it is one of sound judicial discretion controlled by established principles of equity, and it will be granted or withheld by the Court upon a consideration of all of the circumstances of each particular case.   The contract sought to be enforced must be certain and definite in all of its provisions, and fair and mutual in its terms, and must be so clearly proven as to satisfy the Court that it constitutes the actual agreement between the parties.   If any of these ingredients are wanting the specific performance will not be decreed. *Geiger* v. *Green,* 4 Gill 367; *Stoddert* v. *Bowie,* 5 Md. 18; *Dorsey* v. *Wayman,* 6

Gill 59; *Waters* v. *Howard,* 8 Gill 270; *Gelston* v. *Sigmund,* 27 Md. 334; *Schwanebeck* v. *Smith,* 77 Md. 319.

The written memorandum in the present case is, when considered as a contract, defective in some of the elements most essential to induce a Court to decree its performance. It is neither certain nor definite. On the contrary, it is elliptical and obscure to such a degree that its meaning cannot be certainly ascertained without the aid of extrinsic evidence.

The offer to sell the Hammett lot made by the appellant is a conditional one. Its first condition is that the appellee allow Mr. Grafflin one year in which to pay him $1,500 and deed the farm to him when the $1,500 is paid, but there is nothing in the memorandum to show what farm was intended, or what, if any, relation the $1,500 to be paid in connection with the farm bore to the $4,500 to be paid for the Hammett lot. Nor does it appear what was Grafflin's connection with the transaction or for what reason or on whose account he was to pay the $1,500 or whether he was under any obligation at all to make the payment. The written memorandum therefore standing by itself is too indefinite and uncertain in its provisions to be properly made the subject of a decree for its specific performance as a contract.

An attempt was made to fill up the gaps in the memorandum and remove its ambiguity by parol testimony, and for that purpose the appellant, the appellee and Grafflin were all put upon the stand and each one gave his version of what the contract in reality was. Exceptions were filed to some of the testimony but they were not passed upon by the Court below and were not insisted upon at the hearing in this Court. It is not necessary that we should pass upon them, for in our opinion the decree of the Circuit Court must be affirmed, whether the exceptions be sustained or overruled.

The appellee in his testimony insisted that the real agreement between the parties was for an exchange of the Hammett lot for a farm in St. Mary's county, and that in the exchange the Hammett lot was to be valued

at $4,500 and the farm at $1,500, and that the $3,000 difference was all that he was to pay to the appellant. The farm was to be conveyed to Grafflin as the agent of the appellant and the appellee was then to lend Grafflin $1,500 for a year and be secured by a mortgage upon the farm. Grafflin's name was substituted for that of the appellant as purchaser of the farm because the latter did not wish to execute a mortgage.

Grafflin, who appears to have negotiated the. transaction as a real estate broker, fully corroborated in his testimony the version of the matter given by the appellee and also said that the appellant knew that to be the correct version.

The appellant in his testimony stoutly denied the truth of the appellee's account of their agreement, but referred to the written memorandum as containing the true contract, although he made no attempt to clarify the obscurity of that instrument. When he was asked on cross-examination whether the farm was not included in the deal and at what price, he replied: " The farm was not mentioned in the deal, I sold the property at $4,500 as per the agreement." Again when he was asked if the farm which is referred to in the agreement was not included in the transaction for the sale of the Hammett lot, he replied: " It was not, nothing at all to do with it, I sold the property for $4,500 according to the agreement." When he was further pressed for some explanation of the mention by him of the farm and the $1,500 in his own written offer to sell the Hammett lot, he answered indirectly and evasively and threw no light upon the subject.

The preponderance of this testimony tends strongly to support the contention of the appellee, but the appellant denies the correctness of the appellee's version of the contract and does not by his bill ascribe any such meaning to the contract or ask for its performance in that form.

A number of witnesses testified in reference to interviews between the parties to the suit or their representatives after the making of the contract and before the

filing of the bill, but this intercourse did not change the attitude of the parties toward each other or reconcile their conflicting contentions as to what was the true contract between them.    In view of the pertinacity with which each party adhered to his own assertion of what the written memorandum was intended to set forth, it is doubtful if there ever was any full meeting of minds between them.    Neither the written contract nor the contract and testimony taken together presents a proper case for a specific performance.

The decree of Circuit Court No. 2 will be affirmed with costs.

*Decree affirmed with costs.*

(Decided December 20th, 1898.)