## FRANCIS DE BEARN, BERNARD DE BEARN, ODON DE BEARN AND PIERRE DE BEARN

*vs.*

## PRINCE HENRY DE BEARN.

*Contracts: void for vagueness.*

In order to constitute a valid verbal or written agreement, the parties must so express themselves that it can be ascertained to a reasonable degree of certainty what they mean.          p. 633

If an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void, for neither the court nor the jury can make an agreement for the parties.                              pp. 633-634

*Decided June 24th, 1915.*

Appeal from the Superior Court of Baltimore City. (DOBLER and GORTER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

. *Edgar Allan Poe* (with *Bartlett, Poe, Claggett and Bland* on the brief), for the appellant.

*Frank Gosnell* (with *Maurice Leon* and *Marbury, Gosnell & Williams* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This case has been before this Court once before, being reported in 115 Md. 668, where questions arising in several appeals against the same appellee were disposed of in one opinion. They were all attachment suits in which the lower Court had passed orders releasing from attachment certain bonds. This Court held that the lower Court had erred in passing such orders for the reason that the bonds were property within the meaning of section 10, Article 9 of Code and were liable to attachment. The lower Court had over-ruled motions to quash the attachments, filed by the appellee, but the questions arising on those motions were not before this Court, those being plaintiffs' appeals and this Court in addition expressly stating the questions involved to be the liability of the bonds to attachment. This is the first time all of the papers originally filed in the case have been before this Court, it being stated in the first record that "the voucher, consisting of certain documents in the French language, together with translation thereof into the English language, is omitted because in no way involved in this appeal."

. , It is in no way necessary to recapitulate the suits in which the appellee, in the present case, has been involved in the Courts of this State further than to say they have been numerous and the litigation far drawn out.

The particular facts out of which the present case arose are that the Princess de Bearn, a resident of France, died, intestate, in the year 1890, leaving surviving her, as her heirs at law and next of kin, six children, all of whom are the parties to this suit with the exception of one daughter.

That under the laws of France all of her property descended to her six children in equal shares, subject to the interest of her husband, who, prior to the institution of this suit, had also died.

On the 16th of April, 1910, the appellants instituted these attachment proceedings against the appellee, for unliquidated damages, for the breach of an alleged contract entered into in February, 1900. A translation of the alleged contract is, in full, in the present record, from which it appears that it was signed by Prince de Bearn, Blanche de Bearn, Francois de Bearn, Pierre de Bearn and Bernard de Bearn, the last of whom were minors, but not signed by the appellant Odon de Bearn. It appears to be an agreement for the partition of a part of the lands of their mother, the Princess de Bearn. By the third paragraph thereof appears the alleged contract whereof a breach is charged. It is as follows:

> "Any of the undersigned who shall be attributed, in the partition, the lot where is situated the piece of land supplying the tile clay, and called the 'Tuileries,' shall be bound to grant a long lease of the said parcel, should the tile-kiln be reorganized or rebuilt elsewhere, all this to the profit of the group. The rent for the said piece of land, to the benefit of the community of the children de Bearn, shall be, according to circumstances and the quality of the lessee or lessees, one hundred francs. After a delay of two years to run from this day the owner of the lot where the tile land is situated shall be able to notify his co-heirs to give their decision as regards the exercise of their right; after three months, if there is no affirmative answer, their right shall be forfeited."

The tile land was allotted to the appellee, and March 20th, 1902, more than two years after the alleged contract, he sold the same, for the sum of forty-two thousand francs, without notice to his brothers and sister.

There also appeared for the first time before this Court a letter from a certain Mr. Surgit, which being translated, reads as follows:

"Nevers, March 20th, 1910.

Monsieur Le Compte Odon de Bearn,
    Place St. Georges, 28 9eme, Paris.

I returned from travelling and learn of your favor of the 5th inst., which I hasten to reply to.

On the occasion of your last visit to Nevers I believe indeed that I told you that we had proposed with the Prince de Bearn to establish a mechanical lime-kiln for working up porcelain clays which he owned at this time, belonging to the Chateau Sermoise, and if the affair had been put through we would have been prepared to pay him the sum of about twenty thousand francs a year for the removal of the clay; that is to say more or less according to the removals which we should have made.

I think that this affair is completely at an end, and I have no further idea of interesting myself in it personally, nor have any of my friends since the Prince has sold.

I think that is all that I can say on the subject at present, and I regret not being able to give you better news.

Receive, Count, my sincere salutations.

(Signed)  ........................"

Based upon the statement in the above letter, that if the appellee had concluded terms with Mr. Surgit he would have been able to secure an annual rental of the tile land for twenty thousand francs, the appellants claim that the rental at that sum represented a total capital of six hundred and sixty-six thousand francs and that of this sum each child of the Princess is entitled to one-sixth part thereof, together with interest for eight years, making the total amount claimed by the four appellants one hundred and six thousand three hundred and eighty-eight dollars and thirty-two cents.

On the return day of the writ the garnishees appeared and filed pleas. On June 22nd, 1911, the cases reported in 115 Md. were decided. On April 12th, 1912, the Supreme Court of the United States dismissed the writ of error to this Court in those cases, for want of jurisdiction. It was conceded in argument that judgments were recovered in the other attachment suits soon after the mandate from the Supreme Court was returned, but that in the present case nothing was attempted to be done, until on August 21st, 1914, the appellee entered his appearance through counsel, and filed pleas. Later on the same day the appellants filed three separate motions: first, that the order for the appearance of the appellee be not received, for the reason that the said order was not filed until after the expiration of a year and a day from the date of the return of the attachment; second, that the pleas filed be not received, for the same reason, and the third for a judgment of condemnation *nisi* against so many of the bonds, under attachment, as might be necessary to pay and discharge the claim of the appellants against the appellee, amounting to $106,388.32. All of the motions were overruled, and from those orders this appeal was taken.

Because of the view we hold of the alleged cause of action in this case, it will not be necessary to discuss the majority of the questions raised on this appeal. If the cause of action gives the appellants no right to recover against the appellee, then, necessarily the whole proceeding falls. There is no more settled rule of law, in actions based upon contracts, then, that if the contract sued upon, whether written or verbal, is vague or uncertain in its terms, no action will lie upon it. The rule is perhaps as explicitly expressed in the case of *Thomson* v. *Gortner,* 73 Md. 474, as anywhere, where JUDGE MILLER, in delivering the opinion, thus stated it: "The law is too well settled to admit of doubt, that in order to constitute a valid verbal or written agreement, the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. And if

an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void; for neither the Court nor jury can make an agreement for the parties. Such a contract can neither be enforced in equity nor sued upon at law. It is hardly necessary to cite the numerous authorities that sustain this plain legal proposition. Our own decisions in *Delashmutt* v. *Thomas,* 45 Md. 140; *Gelston* v. *Sigmund,* 27 Md. 334; *Myers* v. *Forbes,* 24 Md. 598, and *Howard* v. *Carpenter,* 11 Md. 259, are quite sufficient." An examination of the cases cited fully bears out the text of the opinion, and we might add the cases of *Schwanebeck* v. *Smith,* 77 Md. 314; *Horner* v. *Woodland,* 88 Md. 511, and *Ward* v. *Newbold,* 115 Md. 689. In *Horner* v. *Woodland, supra,* a case for specific performance, the Court said in speaking of the contract sought to be enforced: "The written memorandum in the present case is, when considered as a contract, defective in some of the elements most essential to induce a Court to decree its performance. It is neither certain nor definite. On the contrary, it is elliptical and obscure to such a degree that its meaning cannot be certainly ascertained without the aid of extrinsic evidence." Reading the contract in the present case and applying the above principles, we find it impossible to arrive at any clear conclusion as to what the parties intended, so as to make it the basis of a judicial action. No one can read the agreement, a part of which we have set out above, and tell with any degree of certainty, whatever, just what the parties were attempting to express as to their reciprocal rights and obligations. And this is said with due regard to the literal translation. For instance, in providing that the party to whom should be allotted the piece of land supplying the tile clay, should be bound to grant a long lease, should the tile-kiln be reorganized or rebuilt elsewhere.

The agreement is absolutely silent as to who should bear the expense of rebuilding the kiln, as well as to what term should constitute a long lease. The provision as to the rent

to be paid is altogether indefinite. What meaning can be attached to the expression, "the rent * * * shall be, according to circumstances and the quality of the lessee or lessees, one hundred francs?" What meaning is to be attached to the clause reading: "After a delay of two years to run from this day the owner of the lot where the tile land is situated shall be able to notify his co-heirs to give their decision as regards the exercise of their right; after three months if there is no affirmative answer, their right shall be forfeited?" What right was to be exercised? The agreement is again silent as to what right they could exercise. What right was to be forfeited? These are some of the numerous questions occurring to us as illustrative of the vagueness and uncertainty of this agreement sought to be enforced by this action, and we are clearly of the opinion that it cannot be made the basis of an action.

We are therefore of the opinion that the lower Court was correct in its rulings.

*Orders affirmed, with costs to the appellee.*