GEORGE MAYNARD MARTZ, ET AL. *v.* FRANCES I. JONES, ET AL.

[No. 54, October Term, 1947.]

*Decided December 12, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Ralph G. Hoffman* and *Malcolm B. Tebbs* for the appellants.

*Joseph R. Byrnes,* with whom were *A. Earle Shipley, David P. Gordon* and *Levy, Byrnes & Gordon* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

The appellees in this case owned two pieces of property located on Springfield Avenue, in Sykesville, Carroll County, Maryland. They sold one of these properties, improved by an apartment house, to the appellants. The other property, adjacent thereto, improved by a dwelling house and outbuildings, was occupied by them as a home. After the execution of the deed, dated August 7, 1945, by them to appellants, it was discovered what is alleged to be an error in the description of the property conveyed.

The bill in this case, filed by the appellees, in the Circuit Court for Carroll County, in Equity, avers that there was a mutual mistake made in the description of the land conveyed, and prays that the deed may be reformed so as to express the real intention of the parties.

Appellants, in their answer, deny there was a mutual mistake in the description of the property contained in the deed to them by the appellees, but, on the contrary, aver that the deed expresses the true intention of the parties.

The chancellor decreed that the deed be reformed, and appellants appealed.

The testimony of the appellees was that the appellants were directed to the property concerned by a real estate agent, and were told by him that appellees would reserve a part of the property. The appellants called to inspect the property on Sunday, August 6, 1945, and saw Miss Elsie S. Jones and Miss Ida W. Jones, two of the appellees. They were told by these ladies that they would reserve from the property twenty-one feet from the division line, to be used by them as a driveway. The ladies testified Mr. Martz (one of the appellants) stepped

off twenty-one feet on Springfield Avenue, from a marker between the two properties. He went to a point in the rear of the property, sighted to the point he had stepped off, planted an iron pipe at that point in the rear, and said that line should be the new division line. That is, the line should run from the iron pipe to a point on Springfield Avenue twenty-one feet northwest of the marker, which marked at that time the division of the properties. Martz said he wanted a square lot. Miss Elsie S. Jones testified: "Naturally, we thought we had reserved 21 feet to go straight through. * * * we decided to sell the apartment house, and reserve 21 feet for a driveway." She said that when the appellants came to inspect the property, she asked Martz "if Mr. Clark (the real estate agent) told them about the 21 feet we wanted to reserve, and he said, yes, he told them" and "as soon as my sister, Ida, came home from Church services, * * * Mr. Martz and us two went out and marked off the line. He said emphatically he wanted a straight line. Mr. Martz stepped off 21 feet then looked to the rear of the lot and sighted to where Ida was standing, and then he picked up an iron pipe, * * * and drove it in the ground right where he wanted this line to come. Then he stuck a wooden stick in the pipe opening. We thought it would come up a few feet further on the other way."

The testimony of Miss Ida W. Jones confirms her sister, and regarding the reservation she testified:

"Q. What you really wanted was 21 feet, not straight, but 21 feet in the back and in order to do that you had to get an irregular line? A. We had 21 feet reserved in the front.

"Q. And 21 feet in the rear? A. And, we thought the 21-foot line went straight through."

The witness Hardesty said he saw Martz remove the iron pipe, which Martz denied.

Martz testfied that on the day he inspected the property the sisters told him they "wanted to reserve 21 feet in the front," and he specified he "wanted a square

line, a square lot." "We sighted back through there, as near as we could."

"Q. When you sighted back to see where this line was going, did that sight lead you through the middle of their garage? A. Well, according to the amount of feet, it did.

"Q. Then, you looked through the middle of the garage; is that right? A. Yes, sir.

"Q. You sighted that division line to go right on back through the middle of their garage? A. Wherever that amount of feet went. I wanted the same feet, the same width in the back, as I had in the front on Springfield Avenue."

He did not call to the attention of the sisters that this line ran through the middle of their garage. This witness is uneducated and thought a square lot was the same as a rectangular lot. He "expected the division line to go between the two houses," and "about the same distance from the front of the house as it was from the back of the house."

The evidence is that the house in which the sisters reside stands close to the line of division between the two properties, and they wanted the twenty-one foot reservation so their house would not be so close to the property conveyed, and to use the same for a driveway. The front of each house is roughly parallel to Springfield Avenue, but the side lines are not parallel to that Avenue. Both parties supposed these lines were parallel. Under the deed of August 7, 1945, the line between the properties runs, with reference to the house on the sisters' property, "about 17 feet at the front porch, and out 10 feet at the corner of the house, and it comes in 8 feet to the chimney", and there is not space enough for a driveway. Then, too, it is clear they thought the reservation would include their garage. Manifestly they did not intend the line between the properties to run so close to their house, and to be insuffcent for a driveway, nor that it would bisect their garage. The deed in question does not express the intention of the sisters.

The testimony of the appellees further shows that on September 9, 1945, Martz came to their home and said: "There is something wrong about the line. * * * I don't want to cheat you people, * * * I want to have my straight line, I don't want a crooked line." Martz made an equivocal denial of this, but there is testimony to show that he told the sisters to employ a surveyor and have the property surveyed, and that they engaged Mr. Koller, a surveyor, who did run the line as pointed out on the day the inspection was made by Martz, and Martz admitted he paid Koller for making this survey.

Koller ran the line that the sisters contend Martz said he wanted. This survey shows that the rear line will be about twenty-six feet shorter than is shown by the deed sought to be reformed. Thereafter Koller ran the lines according to the deed given by the appellees to appellants, and this survey corresponded with the description in that deed. He later located on the ground, the position of the garage, and found that a line of the deed from appellees to appellants bisected the garage.

The apartment house property formerly was owned by Julia A. Jones, the mother of appellees. It fronts on Springfield Avenue about one hundred and thirty-two feet, with a depth of about two hundred and forty-five feet. If we deduct twenty-one feet on Springfield Avenue its frontage on that avenue would be reduced to one hundred and eleven feet, and if this twenty-one foot reservation ran along the whole division line between the two properties, the rear line of the property sold would be reduced to about one hundred and eleven feet. This would have given appellants a rectangular lot, and, Martz thought, would be a square lot, as he thought a square lot and a rectangular lot were the same. He said he wanted a square lot, and this is confirmed by the sisters.

The confirmatory deed which the chancellor decreed contained the land which appellees agreed to sell and appellants agreed to buy, is not a rectangular lot, and it is clear that appellants did not intend to buy the lot

described in the confirmatory deed. It cannot be said that the proof in this case shows beyond a reasonable doubt that the lot described in the confirmatory deed is the lot that appellees intended to sell and the appellants intended to buy.

The law in cases like this has been often stated by this court. In *Stiles v. Willis,* 66 Md. 552, 8 A. 353, 354, Chief Judge Alvey said:

"But in such cases it is not enough to show the intention of one of the parties to the instrument only; the proof must establish, incontrovertibly, that the error or mistake alleged was common to both parties; in other words, it must be conclusively established, that both parties understood the contract as it is alleged it ought to have been expressed, and as in fact it was, but for the mistake alleged in reducing it to writing. The court will never, by assuming to rectify an instrument, add to it a term or provision which had not been agreed upon, though it may afterwards appear very expedient or proper that it should have been incorporated."

*Hoffman v. Chapman,* 182 Md. 208, 34 A. 2d 438; *Brockmeyer v. Norris,* 177 Md. 466, 10 A. 2d 326; *England v. Universal Finance Co.,* 186 Md. 432, 47 A. 2d 389.

In the *Hoffman* case Judge Delaplaine said [182 Md. 208, 34 A. 2d 439]:

"It is a settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement."

The appellees carried the burden of proof to show beyond a reasonable doubt what the actual agreement was with the appellants. If they did not meet this burden they were not entitled to relief. The evidence in the case shows that the appellees intended to reserve twenty-one feet of the property to be conveyed to the appellants, to be used as a driveway to and from their home property. This driveway was to parallel the

boundary line between the two properties, and was to run from Springfield Avenue, parallel with the boundary line, to the rear of the property sold.

The appellees take the position that it was intended that the eastern line of the property should run from a point at Springfield Avenue twenty-one feet east of the division line, to a pipe set in the ground by Martz, which we have referred to. This would shorten the rear line of the property which Martz would get under the deed of August 7, 1945, about twenty-six feet, and the lot would not be a rectangular lot. According to the evidence, the appellees intended one thing and Martz intended another thing. From the testimony it is not proved beyond a reasonable doubt what property to be conveyed was agreed upon by the parties. The matter is involved in considerable uncertainty. In order to constitute a valid verbal or written agreement, the parties must so express themselves that it can be ascertained to a reasonable degree of certainty what they mean.

*De Bearn v. De Bearn,* 126 Md. 629, 95 A. 476.

This case resembles the case of *Page v. Higgins,* 150 Mass. 27, 22 N. E. 63, 65, 5 L. R. A. 152. There it was thought by the grantee that the deed was to include a part of the land called "Cheever", but the grantor did not intend to convey that lot. It was pointed out in that case that the mistake was not one and the same mistake that was entertained by the grantor and the grantee, but two different and separate mistakes, and, "If the defendant is not bound by the deed as it is, it cannot be reformed against the consent of the plaintiff, so as to exclude the Cheever lot, because that would be to make a contract which the plaintiff never intended to make."

We think, in this case, both the appellants and appellees were mistaken as to the lot that was to be conveyed, and the appellants could not have enforced the contract against the appellees, nor the appellees against the appellants, because the contract was uncertain and indefinite. The deed sought to be reformed in this case

can be annulled by either party. The decree of the chancellor must be reversed, without prejudice to either party to institute proceedings for annulment.

> *Decree reversed, without prejudice to either party to institute proceedings for annulment, costs to be paid, one-half by appellants and one-half by appellees.*