# MICHAEL G. CAPPY *v.* HUGH F. WILDE, SR.
## ET AL.

[No. 637, September Term, 1976.]

*Decided February 10, 1977.*

The cause was argued before MOYLAN, DAVIDSON and LISS, JJ.

*Stanley R. Jacobs* for appellant.

Submitted on brief by *John B. Robins, Robins, Robins & Johnson, Raymond C. Shockley* and *Williams, Hammond, Moore & Shockley* for appellees.

LISS, J., delivered the opinion of the Court.

This case arises out of a contract of sale executed on July 28, 1972, by the terms of which Michael G. Cappy, the

purchaser and appellant herein agreed to buy and Hugh F. Wilde agreed to sell a number of lots located in Ocean City, Worcester County, Maryland. The contract was prepared by an employee of Robert S. Bounds, a duly licensed real estate broker who was acting on behalf of the seller. Wilde and Bounds are the appellees in the case.

The contract set the purchase price as $480,000.00 of which $20,000.00 was to be paid at the time of the signing of the agreement with the balance to be paid at settlement, which was to be held on or before October 1, 1972.

The property purchase was described in the contract as follows:

> "Witness that the said Seller does hereby bargain and sell unto the said Buyer, and the latter does hereby purchase from the former the following described property, situate and lying in Ocean City, Worcester County, 10th Election District, Maryland, consisting of 45,250 square feet located between 71st and 72nd Streets on the East Side of Ocean Highway as shown on the attached plat outlined in green and made up of seven and one-half building lots. Zoned R-3."

Attached to the contract was a hand drawn sketch, also prepared by Bounds' employee, giving the dimensions of the lots and the lot numbers of the property being sold. At the bottom of the hand drawn plat, the dimensions of the 7½ lots to be purchased by appellant were indicated as 45,250 square feet. No survey of the property was made by either party prior to the execution of the contract, and it is admitted that the lot numbers designated on the sketch do not correspond to any recorded plat of the property. The sketch indicated that the seller was retaining ownership to additional vacant land located at the southwest corner of and contiguous to the land agreed to be sold by the contract to the appellant.

Appellant stated at the trial that sometime in August of 1972, he was notified by the broker that the seller could not convey 45,250 square feet as required by the contract

and that Wilde proposed to deduct a six foot strip running along one of the boundary lines of the property purchased by him. Wilde, who was called as an adverse witness, denied intending to deduct any square footage but stated that a subsequent check by him disclosed that the $7^1/_2$ lots to be conveyed did not contain 45,250 square feet but instead were some 824 square feet short of that amount; he stated that this information was conveyed to Cappy sometime in August of 1972.

The transcript discloses that there were misunderstandings concerning the handling of the $20,000.00 deposit required to be made by the purchaser: Appellant stated that he gave the real estate broker a check representing the deposit with the understanding that it would not be deposited until he was notified by appellant that the funds to pay the check were available, but the broker deposited the check which was promptly returned by the bank as uncollectible; that on September 1, 1972, after having been notified of the problem concerning the square foot shortage, he furnished the broker with a cashier's check for $20,000.00 to replace the deposit check that had been dishonored.

Appellant also testified that upon being notified of the square foot shortage in the land contracted for, he requested his architect to determine what the effect of the shortage would be on the 130 unit building he proposed to erect on the property; the architect's report had not been received by September 1st, when the original deposit check was made good. In the latter part of September the architect reported that the deduction of the six foot strip along the boundary line of the property would result in "the loss of a whole row of parking, which is 20 spaces. Then you lose 20 units," he said, "because motel units are directly related to the number of parking spaces you can provide." Upon receipt of this information, the appellant decided he could not consummate the transaction.

No final settlement was ever scheduled and no tender of a deed was ever made by the seller. After October 1, 1972, appellant made demand for a refund of his deposit, and the

demand was refused. Suit for a return of the deposit was then filed by the appellant against Wilde, the seller, and Bounds, the real estate broker. After removal from the Circuit Court for Worcester County, the case was tried non-jury in the Circuit Court for Wicomico County, and the appellant offered as evidence the facts which we have recited. At the conclusion of the appellant's case, the trial court granted the defendants' motion to dismiss and judgment was extended for the defendants with costs. It is from that judgment that this appeal was seasonably filed.

Appellant has stated the questions to be decided by this appeal in five different forms, but they amount to the same question: Did the trial court err when it granted the defendants' motion to dismiss and thereby decided that the seller was entitled to retain the deposit of $20,000.00? We think the answer is yes; the trial court did err, and we shall reverse.

Dispositive of this controversy, we believe, is *Smith v. Bounds Package Corp.*, 206 Md. 74, 110 A. 2d 71 (1955), in which the appellee contracted to buy from the appellant a farm for the purpose of clearing from it certain timber. Subsequent investigation revealed that the appellant did not own about half of the land which the appellee thought it was buying, and the portion not owned by the appellant contained more than half of the timber which the appellee thought it was buying. The trial court set aside the contract on the ground of mistake and ordered the appellant to refund monies received as part payment. In affirming the trial court, the Court of Appeals said at page 79 of its opinion:

> "The case is one of a contract entered into through mutual mistake as to an unquestionably material fact. Cancellation is an appropriate remedy, where, as here, the parties can be restored to substantially their original positions. As was said in *Gross v. Stone*, 173 Md. 653, at 665, 197 A. 137, at 142: ' * * * while parol evidence is not ad-

missible to alter or vary a written instrument expressing an agreement, it may be admitted to show that, because of a mutual mistake of the parties, their minds never met as to its subject-matter, and that consequently there never was an agreement. Where that fact is clearly shown, it is generally but not uniformly held that the instrument may be cancelled.'

"Likewise, in *Martz v. Jones*, 189 Md. 416, at 423-424, 56 A. 2d 30, at 33, this Court, in an opinion by Judge Grason, said: 'We think, in this case, both the appellants and appellees were mistaken as to the lot that was to be conveyed, and the appellants could not have enforced the contract against the appellees, nor the appellees against the appellants, because the contract was uncertain and indefinite. The deed sought to be reformed in this case can be annulled by either party. The decree of the Chancellor must be reversed, without prejudice to either party to institute proceedings for annulment.' "

*St. Luke's House v. DiGiulian*, 274 Md. 317, 336 A. 2d 781 (1974); *4500 Suitland Road Corp. v. Ciccarello*, 269 Md. 444, 306 A. 2d 512 (1973); Pomeroy, *Equity Jurisprudence*, § 870 (5th ed., 1941); 13 Williston, *Contracts*, § 1544 (3rd ed., 1970); Restatement of Contracts, § 502 (1932).

The trial court at several points in its opinion indicated its belief that there had been a mistake in the calculation of the square footage of the land to be conveyed to the buyer. *Brodsky v. Hull*, 196 Md. 509, 77 A. 2d 156 (1950), is authority for the proposition that a statement of the quantity of land is a statement of fact, not of opinion; a purchaser is entitled to assume that the seller knows the acreage of the land which he is selling. The trial court suggested that the appellant might have been entitled to demand the return of his deposit when he was first notified of the discrepancy; the court, however, attached great significance to the fact that the appellant made good the

original deposit check after the shortage in the square footage had been called to his attention.

Appellees suggest that the appellant's conduct amounted to an acquiescence regarding the reduction of the property to be conveyed to him. As authority for such a theory they cite *Hagan v. Dundore*, 187 Md. 430, 50 A. 2d 570 (1946); and *Faller v. Faller*, 247 Md. 631, 233 A. 2d 807 (1967). Our careful consideration of these cases convinces us that they are factually inapposite to the facts in this case. Appellees urge that when appellant discovered that he was not going to get all he thought he was entitled to, he should have promptly notified the seller that he was rescinding the contract and would not make the deposit. We do not agree that the appellant acted in bad faith. The uncontradicted evidence was that immediately upon notification of the reduced footage, the appellant requested his architect to advise him of what effect the shortage would have on his plans for the site. He made the deposit good in order to maintain the contract until the effect of the shortage could be determined. When he was advised in the latter part of September of the substantial effect on his ability to develop the tract as desired, he immediately notified the seller of his demand for a return of the deposit. We point out that it was the seller who — albeit innocently — misrepresented the square footage of the tract of land.

There is more than a suggestion in the testimony that the seller had adjoining land from which he could have conveyed the square footage called for in the contract. He apparently elected not to do so because of the effect such a transfer would have on the land at the southwest corner of the tract which he retained for his own building purposes. To permit the seller, whose unilateral misrepresentation was the cause of the difficulty, to retain the deposit under the circumstances would, we believe, amount to an unjust enrichment.

The trial court granted the defendant's motion for a directed verdict at the close of the appellant's case. What evidence, if any, the appellees were prepared to offer had

they been required to proceed with the case we are, of course, unable to determine. Under the circumstances, we have no alternative other than to remand the case for a new trial.

*Judgments reversed.*
*Case remanded for new trial.*
*Costs to be paid by appellees.*